## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

### MOTION INFORMATION STATEMENT

**Docket Number(s):** 23-208 _____     _____ Caption [use short title]

**Motion for:** Injunction pending appeal

_____

_____

Set forth below precise, complete statement of relief sought:

Enjoining Suffolk County policy (i) implementing a 2-3 year wait time          **Giambalvo v. Suffolk County, New York**

for issuing a license to possess and/or carry a handgun; and

(ii) a policy subjecting unlicensed individuals to arrest

for complying with the live-fire requirements of the

Concealed Carry Improvement Act (P.L. 400.00(19).

_____

**MOVING PARTY:** Plaintiffs/Appellants          **OPPOSING PARTY:** Suffolk County, New York

☑ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner          ☐ Appellee/Respondent

**MOVING ATTORNEY:** Amy L. Bellantoni          **OPPOSING ATTORNEY:** Arlene Zwilling

[name of attorney, with firm, address, phone number and e-mail]

The Bellantoni Law Firm, PLLC          Suffolk County Law Department

2 Overhill Road, Suite 400          100 Veterans Memorial Highway

Scarsdale, New York 10583          Hauppague, New York 11788

Court- Judge/ Agency appealed from: Hon. Gary R. Brown

**Please check appropriate boxes:**          **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):          Has this request for relief been made below? ☑ Yes ☐ No

☑ Yes ☐ No (explain):_____          Has this relief been previously sought in this court? ☐ Yes ☑ No

_____          Requested return date and explanation of emergency: _____

          March 16, 2023;

Opposing counsel's position on motion:          _____

☐ Unopposed ☒ Opposed ☐ Don't Know          _____

Does opposing counsel intend to file a response:          _____

☒ Yes ☐ No ☐ Don't Know

Is oral argument on motion requested? ☑ Yes ☐ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? ☐ Yes ☑ No If yes, enter date:_____

**Signature of Moving Attorney:**

/s/ Amy L. Bellantoni _____ **Date:** 3 2 2023          Service by: ☑ CM/ECF ☐ Other [Attach proof of service]

**Form T-1080** (rev.12-13)

# 23-208-cv

# United States Court of Appeals
## for the
# Second Circuit

⚫━◀◀━⚫

ZACHARY GIAMBALVO, JOHN MOUGIOS, SHANE
MASHKOW, KEVIN MCLAUGHLIN, MICHAEL MCGREGOR,
FRANK MELLONI, and RENAISSANCE FIREARMS
INSTRUCTION, INC., and all similarly situated individuals,

*Plaintiffs-Appellants,*

*v.*

SUFFOLK COUNTY, NEW YORK, Police Commissioner RODNEY
HARRISON, in his Official Capacity, MICHAEL KOMOROWSKI,
Individually, ERIC BOWEN, Individually, WILLIAM SCRIMA,
Individually, THOMAS CARPENTER, Individually, JOHN DOES 1-5,
Individually and JANE DOES 1-5, Individually, Acting Superintendent of the
New York State Police STEVEN NIGRELLI, in his Official Capacity,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

======================================================

## APPELLANTS' MOTION FOR INJUNCTION PENDING APPEAL

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Plaintiffs-Appellants*
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(914) 367-0090
info@bellantoni-law.com

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................ i

INTRODUCTION .................................................................................. 1

BACKGROUND .................................................................................. 1

A. Suffolk County's 2-3 Year Process to Obtain a Handgun License
(Home and Concealed Carry) ................................................................ 1

B. SCPD "Arrest Policy" for State-Mandated 'Live Fire' Training........................ 4

LEGAL STANDARD ............................................................................. 8

ARGUMENT .................................................................................... 8

I. APPELLANTS ARE LIKELY TO PREVAIL ON THE MERITS;
SCPD'S POLICIES CANNOT SURVIVE THE *BRUEN* TEST ......................... 8

    A. 'Plain Text' Covers Appellants' 'Presumptively Protected' Conduct... 10

    B. The Government Alone Has the Burden of Proof................................. 10

    C. Lengthy Delays Violate the Second and Fourteenth Amendments ....... 11

    D. 'Arrest Policy' Violates the Second and Fourteenth Amendments....... 11

II. APPELLANTS WILL CONTINUE TO SUFFER IRREPARABLE HARM... 11

    A. SCPD's Lengthy Licensing Delays ....................................... 13

    B.  SCPD 'Arrest Policy' ..................................................... 15

III. AN INJUNCTION IS IN THE PUBLIC INTEREST ....................................... 17

IV. BALANCING THE EQUITIES IS IMPROPER FOR SECOND
AMENDMENT CHALLENGES ..................................................................... 18

CONCLUSION ...................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdul Wali v. Coughlin*,
   754 F.2d 1015 (2d Cir. 1985) ................................................................. 8

*Arizona Dream Act Coalition*,
   757 F.3d 1053 (9th Cir. 2014) .............................................................. 17

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1979) ...................................................................... 15, 16

*Benihana, Inc. v. Benihana of Tokyo*, LLC,
   784 F.3d 887 (2d Cir. 2015) ................................................................. 8

*Brenntag Int'l Chem., Inc. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999) ............................................................... 12

*Bronx Household of Faith v. Bd. of Educ.*,
   331 F.3d 342 (2d Cir. 2003) ............................................................... 14

*Cayuga Nation v. Tanner*,
   824 F.3d 321 (2d Cir. 2016) ............................................................... 16

*Connecticut Citizens Def. League, Inc. v. Lamont*,
   465 F. Supp. 3d 56 (D. Conn. 2020) ..................................................... 14

*Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*,
   356 F.3d 226 (2d Cir. 2004) ............................................................... 12

*Crawford v. Washington*,
   541 U.S. 36 (2004) .......................................................................... 10

*Doninger v. Niehoff*,
   527 F.3d 41 (2d Cir. 2008) ................................................................ 14

i

**TABLE OF AUTHORITIES (con't)**

**Page(s)**

## Cases

*Duncan v. Bonta*,
  265 F.Supp.3d 1106 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) . 13

*Elrod v. Burns*,
  427 U.S. 347 (1976) ........................................................................... 14

*Ezell v City of Chicago*,
  651 F3d 684 (7th Cir 2011) ............................................................... 13

*Grace v. District of Columbia*,
  187 F. Supp. 3d 124 (D.D.C. 2016) ................................................... 13

*Hobby Lobby Stores, Inc. v. Sebelius*,
  723 F.3d 1114 (10th Cir. 2013) ......................................................... 18

*J.S.R. by & through J.S.G. v. Sessions*,
  330 F. Supp. 3d 731 (D. Conn. 2018) ............................................... 17

*Jolly v. Coughlin*,
  76 F.3d 468 (2d Cir. 1996) ............................................................... 12

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ......................................................................... 12

*McDonald v. Chicago*,
  561 U.S. 742 (2010) ......................................................................... 13

*Ms. L. v. U.S Immigr. & Customs Enf't ("ICE*,
  310 F. Supp. 3d 1133 (S.D. Cal. 2018) ............................................. 17

*Nevada Comm'n on Ethics v. Carrigan*,
  564 U.S. 117 (2011) ......................................................................... 11

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) ............................................................. 9, 10, 11

**TABLE OF AUTHORITIES (con't)**

**Page(s)**

**Cases**

*O'Lone v. Estate of Shabazz*,
    482 U.S. 342 (1987) ............................................................................. 9

*O'Malley v. City of Syracuse*,
    813 F. Supp. 133 (N.D.N.Y. 1993) .................................................... 14

*Parker v. D.C.*,
    478 F.3d 370 (D.C. Cir. 2007) ..................................................... 14, 15

*Paulsen v. County of Nassau*,
    925 F.2d 65 (2d Cir.1991) ................................................................. 14

*Statharos v. New York City Taxi & Limousine Comm'n*,
    198 F.3d 317 (2d Cir. 1999) .............................................................. 12

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) .......................................................................... 12

*U.S. S.E.C. v. Citigroup Global Mkts. Inc.*,
    673 F. 3d 158  (2d  Cir.  2012) ........................................................ 17

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012) .............................................................. 15

*Valenzuela Arias v. Decker*,
    2020 WL 1847986 (S.D.N.Y. Apr. 10, 2020) ................................... 12

*Virginia v. Moore*,
    553 U.S. 164 (2008) .......................................................................... 10

*Wisdom Import Sales Co. v. Labatt Brewing Co.*,
    339 F.3d 101 (2d Cir. 2003) .............................................................. 11

## TABLE OF AUTHORITIES (con't)

**Page(s)**

**Statutes**

28 U.S.C. §1292 ................................................................................ 8

**Rules**

Fed. R. App. P. 8(a) ......................................................................... 8

**INTRODUCTION**

Appellants are residents of Suffolk County, New York seeking an injunction of two county policies that violate the Second and Fourteenth Amendments pending this appeal.

First, Suffolk County implements a licensing process that takes 2-3 years for its residents to obtain a license to possess in one's home and/or carry concealed for self-defense. The Supreme Court in *Bruen* admonished such "lengthy delays" as unconstitutional. Appellants seek an injunction of Suffolk County's lengthy licensing delays and the implementation of a 30-day licensing requirement.

Second, Suffolk County implements a policy of subjecting unlicensed individuals who engage in the state-required concealed carry handgun training to arrest and incarceration even though the Penal Law allows for an exemption for such training. Appellants seek an injunction of Suffolk County's "Arrest Policy."

**BACKGROUND**

**A. Suffolk County's 2-3 Year Process to Obtain a Handgun License (Home and Concealed Carry)**

Under New York State law, the possession, purchase, carriage, and receipt of a handgun for self-defense in New York State is a crime [Penal Law § 265.00, *et seq.*] unless such individual has applied for and obtained a New York State handgun

1

license. Applications for a handgun license must be made to the statutory handgun licensing officer in the county in which an individual resides.[1]

As residents of Suffolk County, Appellants are required to apply for and obtain a handgun license from Suffolk County Police Commissioner Rodney Harrison by way of the Suffolk County Police Department ("SCPD") Licensing Bureau. See, accompanying Declarations of Zachary Giambalvo [Exhibit 1], John Mougios [Exhibit 2], Shane Mashkow [Exhibit 3], Kevin McLaughlin [Exhibit 4], Michael McGregor [Exhibit 5], and Frank Melloni [Exhibit 6].

Appellants are all eligible to possess, purchase, receive, and transfer firearms[2] for self-defense under federal and state law. See, Exhibits 1-5.

Appellants have subjected themselves to SCPD's process by initiating the licensing procedure to obtain a New York State handgun license by filing SCPD's "Applicant Questionnaire" and paid the filing fee: Giambalvo (in February 2020 and June 2022), Mougios (in July 2021), Mashkow (in 2020 and February 2022), and McLaughlin (in July 2022). [Giambalvo at ¶¶ 6-10; Mashkow at ¶¶ 9-11; McLaughlin at ¶ 4; Mougios at ¶ 8].

Michael McGregor subjected himself to the SCPD licensing process by filing an amendment of his current handgun license to remove his carry restrictions to

---

[1] Penal Law § 400.00, et seq.

[2] The term "firearms" as use herein encompasses handguns, rifles, and shotguns.

allow for unrestricted concealed carry in August 2022. [McGregor Dec. at ¶¶ 19-20].

The process for obtaining a handgun license from the SCPD Licensing Bureau - whether to purchase a handgun, possess in one's home for self-defense, or to carry concealed for self-defense - takes **between 2-3 years**. [Ex. 1-5].

Put differently, the to engage in conduct protected by the Second Amendment – possessing and/or carrying a handgun for self-defense – cannot be exercised by unlicensed Suffolk County residents for at least 2-3 years.

On July 19, 2022, the Licensing Bureau informed Mr. Giambalvo, "there is an approximately a 2 year wait before you will hear from an investigator for the in person interview." [Giambalvo October 28, 2022 Dec. at Ex. 1].

In August 2022, Mr. Giambalvo was informed by "Suzanne" at the SCPD Licensing Bureau, "it's going to take about a year and a half to 2 years to get called for the interview" – a conversation digitally recorded by Mr. Giambalvo. [see, Exhibit 2 to the Giambalvo October 28, 2022 Declaration].

Shane Mashkow emailed the SCPD Licensing Bureau for a status update on his pistol license application and was informed by email dated July 14, 2022, "We are currently processing November/December of 2020, there is an extremely long wait for the interview." [see, Exhibit 1 to the Mashkow Declaration].

3

Michael McGregor – who holds a concealed carry handgun license restricted to "Sportsman" activities - filed an amendment application and paid the fee on August 15, 2022 to simply amend his existing handgun license to remove the restrictions and allow for full carry [McGregor Dec. at ¶¶ 19-20] – or issue a determination denying his amendment application.

SCPD's lengthy licensing delays are depriving Appellants of their right to engage in conduct presumptively protected by the Second and Fourteenth Amendments; absent an injunction, Appellants will continue to suffer irreparable harm.

### B. SCPD "Arrest Policy" for State-Mandated 'Live Fire' Training

To obtain a license to carry a handgun concealed for self-defense, New York requires individuals to have taken and passed an 18-hour training course, which includes a 2-hour "live fire" component.[3]

Appellant Frank Melloni, a federal firearms licensee, trains individuals in the 18-hour course, including the live-fire component, to certify individuals for the issuance of a concealed carry handgun license ("CCW") through his company Renaissance Firearms Instruction, Inc. ("RFI"). Mr. Melloni's 18-hour course is offered to students and potential students, including those individuals who do not

---

[3] After the enactment of the New York State Concealed Carry Improvement Act (CCIA), Mr. Melloni created an 18-hour CCIA-compliant curriculum to train and certify individuals seeking to apply for, or renew, a New York State concealed carry handgun license as required by Penal Law § 400.00(19), including the required 2- hour live-fire component. [Melloni Dec. at ¶¶4-6].

4

yet have a handgun license but seek to complete the CCIA training to present proof thereof with their application for a concealed carry license. [*Id.*].

The CCIA also created an exception to criminal penalties for unlicensed individuals who possess/handle a handgun while completing the live-fire portion of the 18-hour CCIA training. Penal Law § 265.20(3-a).[4] Mr. Melloni registered several unlicensed individuals who sought to take the 18-hour course through RFI, including the live-fire portion of the course, and Appellant Zachary Giambalvo made plans to take the course with RFI. [Giambalvo October 2022 Dec.].

However, due to an internal SCPD policy, Mr. Melloni and RFI are banned from teaching the 18-hour course to unlicensed students and potential students. And students like Mr. Giambalvo are prevented from taking the training course.

Under SCPD's policy (the "Arrest Policy"), as explained directly to Mr. Melloni by the head of the Licensing Bureau, Lt. Michael Komorowski, SCPD "will arrest anybody who handles a pistol or revolver without a New York State pistol permit"; as explained by Lt. Komorowski, SCPD is "not honoring" the § 265.20(3-a) exemption. [Melloni at ¶¶ 10-12]. In the lower court, Lt. Komorowski produced a Declaration opposing Appellants' motion for a preliminary injunction and remained silent in the face of Mr. Melloni's sworn statements concerning their

---

[4] Possessing a loaded handgun is a Class C Violent felony that carries mandatory minimum state prison sentence of 3 ½ years. Penal Law § 70.00.

conversation and the "Arrest Policy." [See, Declaration of Michael Komorowski at Exhibit 7].

Lt. Komoroski did not deny in his sworn Declaration that unlicensed individuals who engage in the CCIA training will be arrested by SCPD. [Ex. 7].

Joseph Terrusa, who is not a party to this action, applied for a handgun license in **September 2021** and has still not received a determination from SCPD. [See, Declaration of Joseph A. Terrusa at Exhibit 8, ¶4]. While waiting for an appointment to be fingerprinted and photographed by the Licensing Bureau, Mr. Terrusa completed the 18-hour course required to obtain a concealed carry license. [Terrusa Dec. at ¶ 5]. But upon hearing that SCPD would arrest an unlicensed person who completed the CCIA training, he contacted SCPD to inquire. [Terrusa Dec. at ¶ 6].

During a phone conversation with the Licensing Bureau on February 7, 2023, "Denise" informed him that it was "illegal" for an unlicensed person to take the CCIA training and that he "would have to apply for a pistol license before [he] could even go for the concealed carry course." [Terrusa Dec. at ¶¶ 7-10 and annexed digital recording]. When he asked Denise about an 'applicant' who had, in fact, already completed the concealed carry training course, she asked, "Where did you go, **because that's illegal.** You can't handle a gun. You can't go to the range and handle a gun." [Terrusa Dec. at ¶10 and annexed digital recording].

On February 8, 2023, when Mr. Terrusa was fingerprinted and photographed at SCPD in connection with his application, he was prevented from applying for a concealed carry license. SCPD instead required him to first apply for a Premises License. [Terrusa Dec. at ¶¶ 12-15]. Once his handgun license is issued - several more months from now - Mr. Terrusa must reapply for a concealed carry license after retaking the CCIA course as a licensed trainee. [Terrusa Dec. at ¶¶ 12-15].

SCPD's Arrest Policy forced Mr. Melloni and RFI to cancel the registrations of the unlicensed students and potential students who signed up for the 18-hour course and is preventing them from providing firearm training to the unlicensed members of the public who seek to comply with the CCIA requirements and access their services.

Mr. Giambalvo also faces imminent arrest and incarceration by SCPD under the "Arrest Policy" because he publicly declared in this lawsuit that he will take the 18-hour course with Mr. Melloni and RFI in December 2022, which contains a live-fire component [Giambalvo October 2022 Dec. at ¶¶ 18-20] and there is no evidence that he has not done so.

In the court below, Appellants sought a preliminary injunction to, *inter alia,* enjoin (i) SCPD's unconstitutionally lengthy licensing process and (ii) the SCPD Arrest Policy, which subjects unlicensed individuals who engage in the 18-hour CCIA training to arrest and incarceration. The district court denied Appellants'

7

motion on February 14, 2023, and Appellants timely filed a Notice of Interlocutory Appeal on February 16, 2023[5].

Appellants then moved for an injunction pending this appeal pursuant to FRAP 8(a), which was also denied.

Jurisdiction in this court is proper pursuant to 28 U.S.C. §1292.

## LEGAL STANDARD

A plaintiff seeking an "injunction while an appeal is pending" before this Court must satisfy the traditional standard for injunctive relief: (1) likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) the balance of the hardships tips in the plaintiff's favor; and (4) the public interest would not be disserved by the issuance of an injunction. *Benihana, Inc. v. Benihana of Tokyo*, LLC, 784 F.3d 887, 895 (2d Cir. 2015) (citation omitted)[6]; Fed. R. App. P. 8(a)(1)(C); *see also* Fed. R. App. P. 8(a)(2).

## ARGUMENT

## I. APPELLANTS ARE LIKELY TO PREVAIL ON THE MERITS; SCPD'S POLICIES CANNOT SURVIVE THE *BRUEN* TEST

A likelihood of success requires a demonstration of a better than fifty percent probability of success. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985),

---

[5] Appellants' delay in filing this application is due solely to the undersigned's recent bout with covid and, respectfully, Appellants should not suffer an adverse inference for the delay.
[6] Appellants satisfied Rule 8(a)(1)'s requirement to "move first in the district court for . . . an order . . . granting an injunction," by requesting the within preliminary injunction from the district court, which was denied by minute entry on February 21, 2023.

disapproved on other grounds, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, n.2 (1987).

Appellants have a substantially higher than 50% likelihood of success on their claims challenging Suffolk County's 2-3 year process for obtaining a handgun license – a glaring violation of the Second and Fourteenth Amendments.

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court reiterated the text, history, and tradition standard of reviewing Second Amendment challenges, consistent with *Heller*, *McDonald*, and *Caetano*. Flatly rejecting the 'interest balancing' 'intermediate scrutiny' test created by the Second Circuit (and others), *Bruen* laid out a clear path to determine the constitutionality of government regulations affecting the Second Amendment:

> "We reiterate that the standard for applying the Second Amendment is as follows:
>
> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.
>
> The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"

*Bruen*, at 2126.

Where later history contradicts what the text says, the text controls. *Bruen*, at 2137.

A.    <u>'Plain Text' Covers Appellants' 'Presumptively Protected' Conduct</u>

Because the plain text of the Second Amendment covers Appellants' conduct – the possession and carriage of a handgun for self-defense, their conduct is 'presumptively protected' by the Second and Fourteenth Amendments.

Firearm training is also conduct protected by the Second Amendment because the 'well-regulated militia' "cannot exist unless the people are trained to bearing arms." *Heller*, at 617 (citation omitted). "No doubt, a citizen who keeps a gun or pistol under judicious precautions, practises [sic] in safe places the use of it, and in due time teaches his sons to do the same, exercises his individual right." *Heller*, at 619 (citation omitted).

B.    <u>The Government Alone Has the Burden of Proof</u>

SCPD "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, at 2126. "Only then may a court conclude that [Appellants'] conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at 2126-2127.

SCPD cannot meet its burden. The scope of the protection provided by the Second Amendment applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791. *Bruen*, at 2137–38 citing, *Crawford v. Washington*, 541 U.S. 36, 42–50, 124 S.Ct. 1354 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008)

10

(Fourth Amendment); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment).

Not only were there no licensing requirements in the Founding Era, a government-imposed delay of the right to keep and bear arms is wildly inconsistent with the mandate that the Right "shall not be infringed."

C.     Lengthy Delays Violate the Second and Fourteenth Amendments

In *Bruen*, the Supreme Court invited constitutional challenges where "lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Bruen*, at 2138 (emphasis added).

Suffolk County's 2-3 year wait time to lawfully possess and/or carry a handgun for self-defense is repugnant to the Second Amendment.

D.     'Arrest Policy' Violates the Second and Fourteenth Amendments

Likewise, subjecting individuals to arrest and incarceration for engaging in firearms training, particularly when such training is authorized by statute, violates the Second and Fourteenth Amendments. There is no historical tradition of any such regulation in the Founding Era.

## II. APPELLANTS WILL CONTINUE TO SUFFER IRREPARABLE HARM

Irreparable harm is certain and imminent harm for which a monetary award does not adequately compensate [*Wisdom Import Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003)] and exists where, but for the grant of equitable

11

relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied [*Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999)]. To establish injury in fact, a plaintiff must show that he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). An allegation of future injury may suffice if the threatened injury is "certainly impending," or there is a "substantial risk" that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation omitted). This injury must be fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision. *Lujan*, at 560–61.

In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm. *Valenzuela Arias v. Decker*, No. 20 CIV. 2802 (AT), 2020 WL 1847986, at *5 (S.D.N.Y. Apr. 10, 2020) citing, *Connecticut Dep't of Envtl. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) (no separate showing of irreparable harm is necessary); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("[I]t is the alleged violation of a constitutional right that triggers a finding of irreparable harm.").

12

The Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald v. Chicago*, 561 U.S. 742, 780 (2010). "The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages…The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence — and psychic comfort — that comes with knowing one could protect oneself if necessary…Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury." *Duncan v. Bonta*, 265 F.Supp.3d 1106, 1135 (S.D. Cal. 2017), aff'd, 742 F. App'x 218 (9th Cir. 2018) citing, *Grace v. District of Columbia*, 187 F. Supp. 3d 124, 150 (DDC 2016); see also *Ezell v City of Chicago*, 651 F3d 684, 699 (7th Cir 2011) ("Infringements of this right cannot be compensated by damages.").

A sufficient causal connection exists between Appellants' injury (the bar to their right to possess, purchase, and/or carry a handgun for self-defense) and SCPD's lengthy licensing delays. Appellants' harms would be redressed by the requested injunctive relief because every Appellant is eligible and qualified to possess firearms under state and federal law.

Appellants' injury-in fact is "concrete and particularized, actual and imminent" because SCPD lengthy licensing delays are preventing Appellants'

13

ability to exercise their Second Amendment rights and, as SCPD concedes in its written and recorded communications, licensing delays will continue unabated.

A. SCPD's Lengthy Licensing Delays

Like the First Amendment, the loss of Second Amendment 'freedoms, for even minimal periods of time, constitutes irreparable injury.' C.f., *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) citing, *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003); *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991) (temporary abridgment of the First Amendment right to free expression constitutes an irreparable injury); see also, *O'Malley v. City of Syracuse*, 813 F. Supp. 133, 140 (N.D.N.Y. 1993).

The denial of a government-issued permit is a quintessential injury-in-fact for purposes of standing. *Connecticut Citizens Def. League, Inc. v. Lamont*, 465 F. Supp. 3d 56, 66 (D. Conn. 2020), vacated on other grounds, 6 F.4th 439 (2d Cir. 2021) citing, *Parker v. D.C.*, 478 F.3d 370, 376 (D.C. Cir. 2007) (denial of registration certificate to own handgun), aff'd sub nom. *D.C. v. Heller*, 554 U.S. 570 (2008). Erecting a 2-3 year barrier to obtaining a government-issued permit satisfies standing as well. Appellants Giambalvo, Mougios, Mashkow, and McLaughlin are absolutely barred from exercising the right to possess, purchase, and/or carry handguns for self-defense, and Michael McGregor is prohibited from carrying a handgun concealed in public for self-defense, because of SCPD's lengthy licensing

14

delays – an existing and irreparable injury. See, *Connecticut Citizens*, at 66 (finding no merit to the State's argument that a 'temporary delay' occasioned by the suspension of fingerprinting does not result in injury).

> "If the Governor and the Commissioner were to issue a gag order barring plaintiffs from exercising their First Amendment free speech rights for the balance of the COVID-19 crisis, plaintiffs would surely suffer injury despite the 'temporary' nature of the crisis. The same holds true for plaintiffs' exercise of their Second Amendment rights."

*Id.*, citing, *United States v. Decastro*, 682 F.3d 160, 167 (2d Cir. 2012) (consulting principles from other areas of constitutional law, including the First Amendment"); *Parker v. D.C.*, 478 F.3d 370, 376 (D.C. Cir. 2007) (denial of registration certificate to own handgun), aff'd sub nom. *D.C. v. Heller*, 554 U.S. 570 (2008).

B. SCPD 'Arrest Policy'

Under *Babbitt*, being threatened with prosecution is not a requirement; it is sufficient for a plaintiff to allege that enforcement is likely. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ("But "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.").

This Circuit has held that when a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he should not

15

be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). The standard established in *Babbitt* "sets a low threshold and is quite forgiving to plaintiffs seeking such preenforcement review." *Cayuga Nation*, at 331.

And courts are generally "willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." *Cayuga Nation*, at 331.

It is SCPD policy to arrest any unlicensed person who engages in the live-fire component of the 18-hour training course. Head of the SCPD Licensing Bureau, Lt. Michael Komorowski, informed Mr. Melloni that SCPD will "arrest anybody who handles a pistol or revolver without a New York State pistol permit"; SCPD is "not honoring" the exemption outlined in Penal Law § 265.20(3-a). [Melloni Dec. at ¶¶ 11-12]. Zachary Giambalvo expressed his concrete plans to attend an 18-hour training course offered by RFI and taught by Frank Melloni in December 2022, including the 2-hour live-fire component. [Giambalvo Dec. at ¶ 18]and faces a credible threat of arrest by Suffolk County police officers. [Giambalvo at ¶ 19; Melloni at ¶¶ 17-20]. Being arrested, fingerprinted, and/or incarcerated would be an irreparable injury and no plaintiff is required to undergo an arrest before being provided with relief. See, e.g., *Cayuga Nation*, at 331.

## III. AN INJUNCTION IS IN THE PUBLIC INTEREST

A preliminary injunction is "in the public interest" if the preliminary injunction would not "cause harm to the public interest." *U.S. S.E.C. v. Citigroup Global Mkts. Inc.*, 673 F. 3d 158, 163 n.1 (2d Cir. 2012). "As with irreparable injury, when a plaintiff establishes 'a likelihood that Defendants' policy violates the U.S. Constitution, plaintiffs have also established that both the public interest and the balance of the equities favor a preliminary injunction.'" *J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 743 (D. Conn. 2018) citing, *Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1146 (S.D. Cal. 2018), modified, 330 F.R.D. 284 (S.D. Cal. 2019), and enforcement granted in part, denied in part sub nom. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020) quoting, *Arizona Dream Act Coalition*, 757 F.3d 1053, 1069 (9th Cir. 2014) (balance of equities favors preventing the violation of a party's constitutional rights).

The public interest would not be disserved by the granting of Appellants' requested relief. The term "the People" in the Constitution "unambiguously refers to all members of the political community, not an unspecified subset….'The people' seems to have been a term of art employed in select parts of the Constitution .... [Its uses] sugges[t] that 'the people' protected by the Fourth Amendment, and by the

First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Heller*, at 580.

Appellants are "the People" for whom the Bill of Rights, including the Second Amendment, was codified. The public interest favors the adherence to and exercise of all constitutionally protected rights, including the Second and Fourteenth Amendments, by law-abiding responsible citizens, and "it is always in the public interest to prevent the violation of a person's constitutional rights." *Duncan*, at 1136 (granting preliminary injunction of California's magazine ban statute) citing, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), aff'd sub nom., *Burwell v. Hobby Lobby Stores, Inc.*, ⸺ U.S. ⸺, 134 S.Ct. 2751 (2014).

SCPD's policies are actively impeding the public's exercise of conduct presumptively protected by the plain text of the Second Amendment and should be enjoined.

## IV.  BALANCING THE EQUITIES IS IMPROPER FOR SECOND AMENDMENT CHALLENGES

While balancing the equities is a prong of the injunctive relief consideration, it is no longer viable in the context of a Second Amendment challenge. A balancing test requires the Court to place Appellants' constitutional rights on one side of the equation and the hardship faced by the government if the injunctive relief is granted.

18

But 'interest balancing" in the Second Amendment context has been thrice flatly rejected by the Supreme Court in *Heller*, *McDonald* and *Bruen*.

"The Second Amendment does not permit - let alone require - judges to assess the costs and benefits of firearms restrictions." *Bruen*, at 2129 (quoting, *McDonald*, at 790-791); *Heller*, at 634 ("[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon.").

Even if balancing were entertained, whatever purported 'hardship' the government would face cannot – and does not - outweigh Appellants' presumptively protected rights under the Second and Fourteenth Amendments. If the government is going to require licensing, the process must be prompt.

## CONCLUSION

Appellants' application for an injunction pending appeal should be granted in its entirety.

Dated: March 2, 2023
    Scarsdale, New York

THE BELLANTONI LAW FIRM, PLLC
*Attorneys for Appellants*

By:     *Amy L. Bellantoni*
            Amy L. Bellantoni (AB3061)
            2 Overhill Road, Suite 400
            Scarsdale, New York 10583
            abell@bellantoni-law.com

19

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief was prepared using Microsoft Word 2016 and, according to that software, it contains 4,252 words, not including the cover, Table of Contents, Table of Authorities, and this Certificate of Compliance.


/s/ Amy L. Bellantoni