# 23-208

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

ZACHARY GIAMBALVO, JOHN MOUGIOS, SHANE MASHKOW, KEVIN MCLAUGHLIN, MICHAEL MCGREGOR, FRANK MELLONI, RENAISSANCE FIREARMS INSTRUCTION, INC., and all similarly situated individuals,

*Plaintiffs-Appellants,*

—against—

SUFFOLK COUNTY, NEW YORK, POLICE COMMISSIONER RODNEY HARRISON, in his Official Capacity, MICHAEL KOMOROWSKI, Individually, ERIC BOWEN, Individually, WILLIAM SCRIMA, Individually, WILLIAM WALSH, Individually, THOMAS CARPENTER, Individually, SUPERINTENDENT STEVEN NIGRELLI, Acting Superintendent of the New York State Police, in his Official Capacity,

*Defendants-Appellees,*

JOHN DOES 1-5, Individually, JANE DOES 1-5, Individually,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## DEFENDANTS-APPELLEES SUFFOLK COUNTY, NEW YORK, POLICE COMMISSIONER RODNEY HARRISON, MICHAEL KOMOROWKI, ERIC BOWEN, WILLIAM SCRIMA, WILLIAM WALSH, AND THOMAS CARPENTER'S OPPOSITION TO MOTION FOR INJUNCTION PENDING APPEAL

DENNIS M. COHEN
   *Suffolk County Attorney*
SUFFOLK COUNTY
   ATTORNEY'S OFFICE
H. Lee Dennison Building
100 Veterans Memorial Highway
PO Box 6100
Hauppauge, New York 11788
(631) 853-4049

*By:* ARLENE S. ZWILLING

*Attorneys for Suffolk County
   Defendants-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

PRELIMINARY STATEMENT ............................................................1

LEGAL STANDARD........................................................................ 2

POINT I
THE APPLICANTS LACK STANDING TO CHALLENGE
LICENSE PROCESSING TIMES........................................................ 4

POINT II
APPELLANTS LACK STANDING TO CONTEST THE CLAIMED
LIVE-FIRE TRAINING POLICY .......................................................... 5

POINT III
APPELLANTS HAVE NOT ESTABLISHED THAT THEY
ARE LIKELY TO SUCCEED ON THE MERITS .................................. 7

    A. Standard For Mandatory Injunction Against Government Action ............... 7

    B. *Bruen's* "Presumptive Protection" Does Not Prohibit the Alleged Practices
    ....................................................................................................... 10

    C. The Burden is Not Shifted ........................................................ 13

    D. The Constitution Does Not Grant Appellants The Rights They Assert ...... 14

        1. The Second Amendment Does Not Compel a Thirty-Day
        License Processing Limit.................................................... 14

        2. The Second Amendment Does Not Preclude Restrictions
        on Live-Fire Training......................................................... 16

POINT IV
APPELLANTS ARE NOT FACING IRREPARABLE HARM............................ 17

POINT V
APPELLANTS HAVE NOT ESTABLISHED THAT AN
INJUNCTION IS IN THE PUBLIC INTEREST .................................................. 18

POINT VI
BALANCING THE EQUITIES IS NOT IMPROPER ......................................... 19

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

*A.H. by & through Hester v. French*,
    985 F.3d 165 (2d Cir. 2021) ..................................................................... 8, 17, 19

*Abdul Wali v. Coughlin*,
    754 F.2d 1015 (2d Cir. 1985) .............................................................................8

*Able v. United Sta*tes,
    44 F.3d 128 (2d Cir. 1995) ...............................................................................10

*Agudath Israel of Am. v. Cuomo*,
    983 F.3d 620 (2d Cir. 2020) .............................................................................18

*Beal v. Stern*,
    184 F.3d 117 (2d Cir. 1999) ...............................................................................3

*Benisek v. Lamone*,
    201 L. Ed. 2d 398, 138 S. Ct. 1942 (2018) .........................................................7

*Bevis v. City of Naperville, Illinois*,
    2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) .....................................................12

*Cayuga Nation v. Tanner*,
    824 F.3d 321 (2d Cir. 2016) ...........................................................................6, 7

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    *598 F.3d* 30 (2d Cir. 2010) .................................................................................9

*Cruz-Kerkado v. Puerto Rico*,
    2018 WL 1684329 (D.P.R. Apr. 5, 2018) .........................................................12

*D.C. v. Heller*,
    554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) ................................11

*Doe v. Bonta*,
    2023 WL 187574 (S.D. Cal. Jan. 12, 2023) ......................................................11

*Doe v. Livanta LLC*,
   489 F. Supp. 3d 11 (E.D.N.Y. 2020) ...................................................9

*Does 1 - 10 v. Suffolk Cnty., New York*,
   2022 WL 2678876 (2d Cir. July 12, 2022) ...........................................6

*Does 1-10 v. Suffolk Cnty., New York*,
   2021 WL 2634734 (E.D.N.Y. June 26, 2021) ........................................6

*Doninger v. Niehoff*,
   527 F.3d 41 (2d Cir. 2008) ..................................................................15

*Eng v. Smith*,
   849 F.2d 80 (2d Cir. 1988) ....................................................................8

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
   559 F.3d 110 (2d Cir. 2009) ..................................................................8

*Gazzola v. Hochul*,
   2022 WL 17485810 (N.D.N.Y. Dec. 7, 2022) .................................9, 12

*GeorgiaCarry.org, Inc. v. U.S. Army Corps of Engineers*,
   212 F. Supp. 3d 1348 (N.D. Ga. 2016) ...............................................12

*JLM Couture, Inc. v. Gutman*,
   24 F.4th 785 (2d Cir. 2022) ...................................................................9

*Jolly v. Coughlin*,
   76 F.3d 468 (2d Cir. 1996) ....................................................................3

*King v. Innovation Books, a Div. of Innovative Corp.*,
   976 F.2d 824 (2d Cir. 1992) ...................................................................3

*Knife Rts., Inc. v. Vance*,
   802 F.3d 377 (2d Cir. 2015) ...................................................................7

*Konigsberg v. State Bar of Cal.*,
   366 U.S. 36, 81 S. Ct. 997, 6 L. Ed. 2d 105 (1961) ............................13

iv

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) .................................4, 6

*Mazurek v. Armstrong*,
    520 U.S. 968, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) .................................3, 7

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
    883 F.3d 32 (2d Cir. 2018) .................................................................................8

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015) ...........................................................................8, 17

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    213 L. Ed. 2d 387, 142 S. Ct. 2111 (2022) ................................................ passim

*No Spray Coal., Inc. v. City of New York*,
    252 F.3d 148 (2d Cir. 2001) ...............................................................................3

*Oakland Tactical Supply, LLC v. Howell Twp.*,
    2023 WL 2074298 (E.D. Mich. Feb. 17, 2023) ..................................................12

*Oregon Firearms Fed'n, Inc. v. Brown*,
    2022 WL 17454829 (D. Or. Dec. 6, 2022).........................................................12

*Phillip v. Fairfield Univ.*,
    118 F.3d 131 (2d Cir. 1997) ................................................................................9

*Plaza Health Lab'ys, Inc. v. Perales*,
    878 F.2d 577 (2d Cir. 1989) ..............................................................................10

*Raia v. Pompeo*,
    455 F. Supp. 3d 7 (E.D.N.Y. 2020)......................................................................9

*Reese v. Bureau of Alcohol Tobacco Firearms & Explosives*,
    2022 WL 17859138 (W.D. La. Dec. 21, 2022)....................................................12

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ..............................................................................3, 7

*Schwartz v. Cerner Corp.*,
    804 F. App'x 85 (2d Cir. 2020) ...............................................................8

*SG Cowen Sec. Corp. v. Messih*,
    224 F.3d 79 (2d Cir. 2000) ...................................................................3

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014) .................................4, 6

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
    60 F.3d 27 (2d Cir. 1995) .......................................................................9

*U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*,
    62 F. Supp. 2d 915 (E.D.N.Y. 1999) ........................................................9

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012) ...................................................................4

*United States v. Tilotta*,
    2022 WL 3924282 (S.D. Cal. Aug. 30, 2022)..........................................11

*Warth v. Seldin*,
    422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) .........................................6

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ................................ 3, 7, 18

*Woodstock Ventures, LC v. Woodstock Roots LLC*,
    837 F. App'x 837 (2d Cir. 2021) ................................................. 2, 3, 7

## PRELIMINARY STATEMENT

Defendants-appellees the County of Suffolk (sued as "Suffolk County, New York") (the "County"), Suffolk County Police Commissioner Rodney Harrison (in his official capacity), Michael Komorowski, Eric Bowen, William Scrima, William Walsh and Thomas Carpenter, submit this memorandum of law in opposition to plaintiffs-appellants' motion for a preliminary injunction pending their interlocutory appeal from the February 14, 2023 Memorandum and Order of the United States District Court for the Eastern District of New York, the Hon. Gary R. Brown presiding, which denied appellants' motion for a preliminary injunction.

Before District Court, appellants sought among other aspects of relief, a mandatory preliminary injunction directing the County's Police Department to pass upon pistol license applications within 3 months of the submission of the completed New York State mandated license form known as the PPB-3. They also sought to enjoin what they assert is the County's policy of subjecting unlicensed individuals who participate in live-fire training with duly certified instructors, and their instructors, to criminal penalties including arrest and prosecution. Appellants also sought preliminary injunctive relief against defendant Steven Nigrelli, Acting Commissioner of the New York State Police.

District Court denied appellants' motion. Judge Brown reasoned that since appellants Giambalvo, Mougios, Mashkow, McLaughlin and McGregor ("the

1

applicants") had not complied with all the prerequisites of a license application, they lacked standing to pursue their claims, "undermin[ing] any showing of a likelihood of success on the merits." The Court below held that appellants RFI and Melloni, respectively a company that offers firearms training and its president, could not show the possibility of irreparable harm as their commercial claims were derivative and compensable by money damages. District Court also concluded that the applicants lacked standing to challenge the arrests and prosecutions they claimed they were threatened with since they "failed to articulate a sufficiently tangible threat of arrest," and an injunction against a New York prosecution must be sought against New York State instead of the County.

Although they asked the court below to direct that appellees pass upon license applications within three months after presentment of the completed PPB-3, appellants now seek to shorten the time clock. They ask this Honorable Court to preliminarily mandate that the County pass upon license applications in thirty days total (p.1, Appellants' Motion For Injunction Pending Appeal). They again request that the County be enjoined from enforcing its supposed practice of arresting and prosecuting persons who take or instruct live fire training classes.

## LEGAL STANDARD

A District Court's grant or denial of a preliminary injunction is reviewed for abuse of discretion. *Woodstock Ventures, LC v. Woodstock Roots LLC*, 837 F. App'x

2

837, 838 (2d Cir. 2021) citing *SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 81 (2d Cir. 2000). "Such an abuse of discretion ordinarily consists of either applying an incorrect legal standard or relying on a clearly erroneous finding of fact." *Woodstock Ventures, LC*, 837 F. App'x at 838 quoting *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) (quoting *King v. Innovation Books, a Div. of Innovative Corp*., 976 F.2d 824, 828 (2d Cir. 1992)).

The standard for a grant of a preliminary injunction is "demanding." *Woodstock Ventures, LC*, 837 F. App'x at 838. "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. quoting *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). Such relief should not be granted "unless the movant, by a clear showing, carries the burden of persuasion." *Id*. quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997).

The appellate court is free to affirm the denial of a preliminary injunction "on any ground [that] finds support in the record." *No Spray Coal., Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001) quoting *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir. 1999).

# POINT I

## THE APPLICANTS LACK STANDING TO CHALLENGE
## LICENSE PROCESSING TIMES

Without exception, all of the applicants have freely chosen not to fulfill the steps necessary to obtain a handgun license (p.7, Memorandum and Order) (Applicants "each have unequivocally expressed their intent, in sworn declarations, to refuse to comply with the various requisites of New York's handgun permit process"). This voluntary choice renders it impossible for them to obtain licenses.

While District Court noted only that the applicants' refusal was a barrier to their challenge to New York State's statutory licensing scheme, it necessarily precludes their challenges to the County's alleged practices as well since the state's licensing statutes form the framework for the issuance of all licenses statewide. *N.Y. Penal Law § 400.00.*

Given that appellants' deliberate actions have rendered them ineligible for pistol licenses, they can suffer no injury in fact attributable to the County. They therefore lack standing to seek to enjoin appellees' actions. See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal quotation marks omitted) (plaintiff must show an "injury-in-fact" to establish Article III standing). See also *United States v. Decastro*,

682 F.3d 160, 164 (2d Cir. 2012) (plaintiff who has not applied for a gun license in New York has no standing to challenge state's licensing laws).

## POINT II

### APPELLANTS LACK STANDING TO CONTEST THE CLAIMED LIVE-FIRE TRAINING POLICY

More than six months have now passed since the effective date of the CCIA's amendment of the New York Penal Law to require firearms safety training. Yet, appellants have not identified a single individual who has been arrested, much less prosecuted, for taking or giving the training. They did not do so before District Court. While they have now presented an additional and more recent affidavit from non-party Joseph Terrusa that was not part of the record before Judge Brown (pp. 48-51, Exhibits), they still do not point to anyone that has been actually arrested or charged. In fact, Terrusa does not claim to have been arrested even though he informed the County that he took the training (¶5, p. 49, Exhibits). Truly, the "linchpin" of the purported threats is merely, as Judge Brown characterized it, "stray comments ….by individual law enforcement officers, which, if made, may well have been taken out of context" (p. 13, Memorandum and Order)

That the County has not actually taken steps to carry out the purported "enforcement policy" does not merely cast doubt upon the alleged policy's existence. It also precludes appellants having standing to challenge the claimed

5

practice. As District Court ably stated, appellants "lack standing" because they "failed to articulate a sufficiently tangible threat of arrest" (p. 14, Memorandum and Order).[1]

Unquestionably, "a plaintiff must show an 'injury-in-fact' to establish Article III standing," *Susan B. Anthony List v. Drie*haus, 573 U.S. 149, 158, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), a criterion "which helps to ensure" that they have a "personal stake in the outcome of the controversy." *Susan B. Anthony List,* 573 U.S. 149, quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).

While an actual arrest is not a must for a plaintiff to demonstrate injury-in-fact, there must be a credible threat of government enforcement action. *Susan B. Anthony List*, 573 U.S. at 159. A credible threat of enforcement entails a fear of prosecution that is not imaginary or wholly speculative. *Cayuga Nation v. Tanner*,

---

[1]     In reaching this conclusion, District Court noted that it had previously denied an application for injunctive relief against a similar alleged County firearms enforcement policy brought by appellants' counsel for a lack of standing (and dismissed the action) in *Does 1-10 v. Suffolk Cnty., New York*, 2021 WL 2634734, at *3 (E.D.N.Y. June 26, 2021), *aff'd sub nom. Does 1 - 10 v. Suffolk Cnty., New York*, 2022 WL 2678876 (2d Cir. July 12, 2022). This Court affirmed Judge Brown's determination that plaintiffs in *Does* lacked standing (and the dismissal) because they had "not alleged that they are at imminent risk of suffering an injury in fact." *Does 1 - 10 v. Suffolk Cnty., New York*, 2022 WL 2678876, at *2–3 (2d Cir. July 12, 2022).

824 F.3d 321, 331 (2d Cir. 2016). A "credible threat sufficient to satisfy the imminence requirement of injury in fact…..will not be found where 'plaintiffs do not claim that they have been threatened with prosecution, that a prosecution is likely or even that a prosecution is remotely possible.'" *Id*. quoting *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015).

Since appellants do not actually claim to have been arrested, or even personally threatened with impending arrest, there is no "credible threat" constituting injury in fact.

## POINT III

### APPELLANTS HAVE NOT ESTABLISHED THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS

**A.    Standard For Mandatory Injunction Against Government Action.**

A preliminary injunction is an extraordinary remedy never awarded as of right. *Benisek v. Lamone*, 201 L. Ed. 2d 398, 138 S. Ct. 1942, 1943 (2018). Injunctive relief "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Woodstock Ventures, LC v. Woodstock Roots LLC*, 837 F. App'x 837, 838 (2d Cir. 2021) quoting *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). A preliminary injunction should not be granted "unless the movant, by

a clear showing, carries the burden of persuasion." *Id.* quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997).

Generally, meeting that burden of persuasion entails that the movant demonstrate "(1) irreparable harm; (2) either a likelihood of success on the merits, or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36–37 (2d Cir. 2018) citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015).

Not all of these factors are to be given equal weight. Irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). "Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Schwartz v. Cerner Corp.*, 804 F. App'x 85, 87 (2d Cir. 2020) quoting *New York ex rel. Schneiderman*, 787 F.3d at 660 (internal quotation marks omitted).

In the ordinary case, a "likelihood of success" requires only a "better than fifty percent" chance of success. *Eng v. Smith*, 849 F.2d 80, 81–2 (2d Cir. 1988) quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985). Significantly however, the injunction sought here is mandatory, rather than prohibitory, as it "would

8

command [ ] a positive act that would alter rather than preserve the status quo." See e.g., *A.H. by & through Hester v. French*, 985 F.3d 165, 176–177 (2d Cir. 2021) (injunction requiring agency to allow student and school to participate in educational program pending determination of constitutionality of funding requirement is mandatory, not prohibitory); *Doe v. Livanta LLC*, 489 F. Supp. 3d 11, 16 (E.D.N.Y. 2020) (injunction that prevents plaintiff's discharge from health care facility is mandatory because it would disrupt status quo); *Raia v. Pompeo*, 455 F. Supp. 3d 7, 15 (E.D.N.Y. 2020) (injunction directing passport to be issued is mandatory). See also, *Gazzola v. Hochul*, 2022 WL 17485810, at *3 (N.D.N.Y. Dec. 7, 2022) ((N.D.N.Y. Dec. 7, 2022) (injunction is mandatory if it prohibits enforcement of laws already in effect; prohibitory if it enjoins laws not yet in effect). Thus, appellants must meet a higher standard. *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp*., 62 F. Supp. 2d 915, 921 (E.D.N.Y. 1999) citing *Phillip v. Fairfield Univ*., 118 F.3d 131, 133 (2d Cir. 1997). They must show either "clear" entitlement to relief or that "extreme or very serious damage" will result from a denial. *JLM Couture, Inc. v. Gutman,* 24 F.4th 785, 799 n.16 (2d Cir. 2022) quoting *Tom Doherty Assocs*., *Inc. v. Saban Ent., Inc*., 60 F.3d 27, 34 (2d Cir. 1995) (cleaned up).

Further, appellants seek "to stay government action taken in the public interest pursuant to a statutory or regulatory scheme." Accordingly, the

court "should not apply the less rigorous ["serious questions"] standard and should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that [they] will succeed on the merits of [their] claim." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd*., 598 F.3d 30, 34 n.4 (2d Cir. 2010) quoting *Able v. United Sta*tes, 44 F.3d 128, 131 (2d Cir. 1995) quoting *Plaza Health Lab'ys, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989)).

Distilling the applicable principles, because appellants challenge government action, they should not be granted injunctive relief unless they demonstrate (1) actual and imminent harm that cannot be remedied by money damages; (2) a clear entitlement to relief or that extreme or very serious damage will result from a denial, and (3) that a preliminary injunction is in the public interest. They failed to make this showing in District Court, and do not remedy that failure at this appellate juncture.

## B. *Bruen*'s "Presumptive Protection" Does Not Prohibit the Alleged Practices.

Appellants seek a mandatory injunction requiring the County to determine handgun license applications within 30 days, and enjoining the County from carrying out its supposed intention to arrest and prosecute those who engage in or provide live-fire training classes. They contend that they are entitled to such extraordinary preliminary relief because the Second Amendment's plain text covers the possession and carrying of a handgun for self-defense. Further, they argue that the plain text of

10

the Second Amendment's "well-regulated militia" clause presumptively protects their right to attend and give live-fire trainings.

The obvious, fatal flaw in these hypotheses is that it cannot be taken for granted that all conduct related to possessing and carrying a handgun for self-defense, or the regulation of a militia- no matter how distant the connection- -falls within the concept of "plain text." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 213 L. Ed. 2d 387, 142 S. Ct. 2111 (2022) ("*Bruen*"). The only guidance *Bruen* gives as to the meaning of "plain text" is its abstract statement that it encompasses "carrying handguns publicly for self-defense." *Bruen* at 2134. *Bruen* affords no guidance as to what specific aspects of carrying handguns for self-defense fall under the "plain text" umbrella. *Bruen* is entirely silent as to what is appropriate for regulating the militia.

This paucity of guidance cannot fairly be interpreted as holding that all conduct with any degree of relationship to the "carrying of handguns for self-defense" or the regulation of the militia is constitutionally protected. Indeed, the Supreme Court has expressly enunciated that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Bruen*, 142 S. Ct. at 2128). See *United States v. Tilotta*, 2022 WL 3924282, at *6 (S.D. Cal. Aug. 30, 2022) citing *D.C. v. Heller*, 554 U.S. 570, 626, 128 S. Ct. 2783, 2817, 171 L. Ed. 2d 637 (2008) (noting that "*Heller, McDonald*, and *Bruen* all state that the Second Amendment right is

11

not absolute and is thus subject to reasonable limitations.") See also *Doe v. Bonta*, 2023 WL 187574, at *5 (S.D. Cal. Jan. 12, 2023) (Since "*Bruen* didn't undo all preexisting gun regulations" licensing requirement, fingerprinting, background checks, and mandatory gun safety training courses may all be permissible).

Post-*Bruen*, several courts have already clarified that the Supreme Court has not immunized all conduct relating to carrying a handgun for self-defense from government action. See e.g., *Bevis v. City of Naperville, Illinois*, 2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) (plain text does not bar prohibition on sale of assault weapons); *Oakland Tactical Supply, LLC v. Howell Twp.*, 2023 WL 2074298 (E.D. Mich. Feb. 17, 2023) (plain text does not cover construction and use of open air 1000 yard shooting range); *Gazzola v. Hochul*, 2022 WL 17485810 (N.D.N.Y. Dec. 7, 2022) (noting that the Second Amendment does not protect "buying, selling, storing, shipping or otherwise engaging in the business of firearms" in denying injunctive relief); *Reese v. Bureau of Alcohol Tobacco Firearms & Explosives*, 2022 WL 17859138, at *10 (W.D. La. Dec. 21, 2022) ("Second Amendment does not protect the ability of 18 to 20-year-olds to purchase handguns from federal firearms licensees"); *Oregon Firearms Fed'n, Inc. v. Brown*, 2022 WL 17454829, at *9–10 (D. Or. Dec. 6, 2022) (magazines capable of holding more than ten rounds not covered by plain text of Second Amendment). In this regard, the *Bruen* Court did not substantively depart from settled law. See e.g., *GeorgiaCarry.org, Inc. v. U.S.*

*Army Corps of Engineers*, 212 F. Supp. 3d 1348 (N.D. Ga. 2016) (permitting restriction of gun use on Army property); *Cruz-Kerkado v. Puerto Rico*, 2018 WL 1684329 (D.P.R. Apr. 5, 2018) ("The affiliation requirements and $250 carry permit application fee are not unconstitutional simply because they regulate the possession and carrying of firearms").

The conduct that appellants seek to engage in is not so closely connected to the possession and carrying of handguns as to be free of regulation.

## C. The Burden is Not Shifted.

Appellants' contention that the County must prove that its purported policies comport with the Second Amendment suffers from the same flaw as their argument that their proposed actions are presumptively protected. It relies on the untenable assumption that plaintiffs' conduct falls within the Constitution's "plain text." It is only where the amendment's plain text covers an individual's conduct that the government must then justify its action. *Bruen*, at 2129-30 quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10, 81 S. Ct. 997, 6 L. Ed. 2d 105 (1961) ("When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.") To the extent that appellants' proposed conduct-being able to carry a handgun within thirty days of applying for a license and participating in unregulated

live-fire training-is not closely enough connected to the "plain text" of the Second Amendment to be covered by it, they retain the burden of proof. It is not shifted to appellees.

Moreover, that licensing requirements may not have existed during the Founding Era does not justify the imposition of a 30-day deadline for processing license applications. The question of how long a process is too long was deliberately left unanswered by the *Bruen* Court. *Bruen* at 2138, n. 9 ("constitutional challenges to ….lengthy wait times in processing license applications" cannot be ruled out). Appellees submit that the "plain text" of the Second Amendment does not require such a brief deadline.

**D.    The Constitution Does Not Grant Appellants The Rights They Assert.**

**1.    The Second Amendment Does Not Compel a Thirty-Day License Processing Limit.**

Appellants point out that the Supreme Court "invited" constitutional challenges to lengthy wait times for processing license applications. Plainly, they recognize the absence of governing law setting time limits for passing upon permit requests. The County submits that this case is not an appropriate vehicle for imposing a 30 day time limit as a matter of first impression.

First, as District Court observed, to have standing to challenge licensing procedures, a movant must show that they have complied with the system's requisites. However, apparently as a matter of principle, appellants have "refuse[d]

14

to comply with the various requisites" of the state mandated licensing process, depriving them of standing. By refusing, they "undermined" their ability to show a likelihood of success on the merits (p.7-10, Memorandum and Order).

Next, *Bruen's* language that "constitutional challenges to ….lengthy wait times in processing license applications" cannot be ruled out, *Bruen* at 2138, n. 9, does not support the strict time limit sought by appellant. The High Court's quoted language, which appears in a footnote rather than the body of the opinion, is not part of the holding. In any event, *Bruen* fixed no constitutional limit on processing time, and appellants identify no other controlling authority clarifying how long is too long.

Last, appellants do not merely argue that the "lengthy delays" spoken of in *Bruen* are impermissible. Their "C.f." citation to *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) and related cases reflects that their contention is actually that any delay in processing license applications is an abridgment of their Second Amendment rights. The plain defect in this position is that, as evident from appellants' reliance on cases that construe the First Amendment, there appears to be no governing authority that applies the prohibition of any delay to Second Amendment rights. It readily appears that the Supreme Court has deliberately refrained from so holding. *Bruen* at 2138, n. 9. ("...we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications….deny ordinary citizens their right to public carry.)

15

**2.     The Second Amendment Does Not Preclude Restrictions on Live-Fire Training.**

Appellants did not contend before District Court, as they now do, that the alleged enforcement policy was a direct violation of their constitutional rights. Rather their argument was that the policy secondarily transgressed the Second Amendment because it conflicted with the exemption from criminal prosecution for unlawful firearms possession created by N.Y. Penal Law § 265.03 (3-a).

Correctly understood however, there is no such conflict. Section 265.20 (3-a) does not afford an unqualified exemption to all who propose to engage in live-fire training without a pistol license. N.Y. Penal Law § 265 (7-b) limits the exemption to "person[s] who ha[ve] applied for a license to possess a pistol or revolver and pre-license possession of same pursuant to N.Y. Penal Law § 400.00 of this chapter...." N.Y. Penal Law § 400.00 (3) (b) makes explicit that application for both a license and an exemption, along with *some* investigation, are a prerequisite for the 7-b exemption. In relevant part, the statute states that each applicant:

> shall make the exemption request of the licensing officer with whom his application for a license is filed, at the time of filing such application…... Such licensing officer shall, no later than ten business days after such filing, request the duly constituted police authorities of the locality where such application is made to investigate and ascertain any previous criminal record of the applicant pursuant to subdivision four of this section. Upon completion of this investigation, the police authority shall report the results to the licensing officer without unnecessary delay. The licensing officer shall no later than ten business days after the receipt of such investigation, determine….. and either approve or disapprove the applicant for exemption purposes based upon

such determinations. If the applicant is approved for the exemption, the licensing officer shall notify the appropriate duly constituted police authorities and the applicant. Such exemption shall terminate if the application for the license is denied, or at any earlier time based upon any information obtained by the licensing officer or the appropriate police authorities which would cause the license to be denied.

In tandem, § § 265 (7-b) and § 400.00 (3)(b) indicate that one must apply for a license and exemption and be subject to some level of investigation prior to engaging in live-fire training. None of the appellants state that they have applied for the exemption or been interviewed. Thus, they have not qualified for the exemption. In any event, as explained in Point III. B. above, appellants' theory that the "plain text" of the "well-regulated militia" clause of the Second Amendment presumptively prohibits restrictions on who may engage in live-fire training is unsupportable.

**POINT IV**

**APPELLANTS ARE NOT FACING
IRREPARABLE HARM**

Irreparable harm is injury that is neither remote nor speculative, but injury that is actual, imminent and cannot be remedied by an award of monetary damages. See *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015). Granted, "a strong showing of a constitutional deprivation that results in non-compensable damages ordinarily warrants a finding of irreparable harm." *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021).

17

However, appellants completely fail to demonstrate irreparable harm. Plainly, appellants Melloni and RFI, whose claims are purely commercial, can be made whole by money damages, if their derivative claims are cognizable at all. The applicants do not maintain that money damages would inadequately compensate them. They do not make the essential "strong showing of a constitutional deprivation" because their categorical proposition that their proposed conduct comes within the "plain text" of the Second Amendment is unsound, and the actions they attribute to appellants do not offend the Constitution. Inarguably, the Court should refrain from imposing injunctive relief given that appellants have not shown that they will suffer irreparable harm in its absence. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

## POINT V

## APPELLANTS HAVE NOT ESTABLISHED THAT AN INJUNCTION IS IN THE PUBLIC INTEREST

Appellants do not attempt to explain how the requested injunction would benefit the public. Instead, taking a shortcut in reasoning, they turn to Ninth Circuit case law indicating that the likelihood of a constitutional violation, in itself, establishes both that an injunction is in the public interest and that the equities balance in the movant's favor. Importantly, the Second Circuit does not appear to have adopted the Ninth Circuit's view. *Agudath Israel of Am. v. Cuomo*, 983 F.3d

18

620, 636–637 (2d Cir. 2020) (separately examining elements of public interest and likelihood of constitutional violation); *A.H. by & through Hester v. French*, 985 F.3d 165 (2d Cir. 2021) (same).

Of course, insofar as appellants fail to show that their constitutional rights are being transgressed, the question of the public interest is academic.

Moreover, whether the public interest will actually be furthered by imposing the injunction demanded is certainly open to debate. Clearly, there are two sides to the question of what will benefit the public interest. The government has a duty to protect the rights of all its citizens. That includes the right of citizens who wish to be kept safe from ill-considered licensing of firearms to inadequately trained and possibly dangerous persons that may well ensue if defendants' ability to ensure that license applicants are qualified, trained and responsible is unnecessarily curtailed.

## POINT VI

## BALANCING THE EQUITIES
## IS NOT IMPROPER

Appellants do not argue, let alone show, that the equities balance in their favor. Instead, they suggest that balancing should play no role in the determination of this motion since they claim a violation of the Second Amendment. Even a cursory review of the language they cite for this proposition indicates that it is inapposite. While perhaps *Bruen* and its antecedents suggest that the judiciary should not

employ a balancing test in considering whether state action offends the Second Amendment, they say nothing about how courts should adjudicate a request for injunctive relief.

The requirement that the movant show that the equities balance in their favor stands, and appellants ignore it.

## CONCLUSION

Appellants' motion for a preliminary injunction pending disposition of their appeal should be denied.

Dated:  Hauppauge, New York
       March 9, 2023

                        Respectfully submitted,

                        Dennis M. Cohen
                        Suffolk County Attorney
                        Attorney for Appellees
                        100 Veterans Memorial Highway
                        Hauppauge, NY 11788

By: */s/ Arlene S. Zwilling*
            Arlene S. Zwilling
            Assistant County Attorney