UNITED STATES COURT OF APPEALS
SECOND CIRCUIT

ZACHARY GIAMBALVO, et al.,

      *Plaintiffs-Appellants*,

No. 23-208

v.

NEW YORK, et al.,

      *Defendants-Appellees*.

## MEMORANDUM OF LAW FOR STATE APPELLEE STEVEN NIGRELLI IN OPPOSITION TO APPELLANTS' MOTION FOR AN INJUNCTION

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellee Nigrelli
28 Liberty Street
New York, NY 10005
(212) 416-6312

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
SARAH COCO
  *Assistant Solicitor General*
    *of Counsel*

Dated: March 13, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................ii

PRELIMINARY STATEMENT .................................................. 1

STATEMENT OF THE CASE ................................................. 4

    A.   Statutory Background ............................................. 4

    B.   Procedural History ................................................. 6

ARGUMENT

    PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION PENDING
APPEAL.................................................................................... 10

    A.   Plaintiffs Lack Standing to Challenge New York's
Licensing Requirements. ....................................... 11

    B.   New York's Licensing Requirements Are Constitutional. ..... 14

    C.   Plaintiffs Have Not Shown Irreparable Harm and the
Public Interest Weighs Against an Injunction. ..................... 15

CONCLUSION ....................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Agudath Israel of Am. v. Cuomo,*
   979 F.3d 177 (2d Cir. 2020) ....................................................... 10, 17

*Cameron v. EMW Women's Surgical Ctr.,*
   142 S. Ct. 1002 (2022) ................................................................. 2, 11

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ........................................................................ 16

*Kanter v. Barr,*
   919 F.3d 437 (7th Cir. 2019) ......................................................... 15

*Keil v. City of New York,*
   No. 21-3043(L), 2022 WL 619694 (2d Cir. Mar. 3, 2022) .................... 9

*Libertarian Party of Erie County v. Cuomo,*
   970 F.3d 106 (2d Cir. 2020) ......................................................... 12-13

*McDonald v. City of Chicago, Ill.,*
   561 U.S. 742 (2010) ........................................................................ 17

*New York v. U.S. Dep't of Homeland Sec.,*
   974 F.3d 210 (2d Cir. 2020) ........................................................... 10

*Peruta v. County of San Diego,*
   824 F.3d 919 (9th Cir. 2016) ......................................................... 2, 11

*Respect Maine PAC v. McKee,*
   562 U.S. 996 (2010) ........................................................................ 10

*United States v. Decastro,*
   682 F.3d 160 (2d Cir. 2012) ......................................................... 12-13

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.,*
   423 F.3d 137 (2d Cir. 2005) ......................................................... 15-16

*Winter v. Natural Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ........................................................................ 10, 15

**Laws**                                                        **Page(s)**

28 U.S.C. § 2403(b) ............................................................... 2, 11

Ch. 233, 1980 N.Y. Laws 1166 ............................................. 16

Ch. 371, 2022 N.Y. Laws (N.Y. Legis. Retrieval Sys.) ......................... 5, 8

Penal Law
    § 265.20 ............................................................. 5
    § 400.00 ..................................................... passim
    § 400.30 ............................................................. 6, 8

**Court Orders**

*Antonyuk v. Hochul*, No. 22-2908 (Dec. 7, 2022), ECF No. 75 ................ 3

*Christian v. Nigrelli*, No. 22-2987 (Dec. 12, 2022), ECF No. 41 .............. 3

*Gazzola v. Hochul*, No. 22-3068 (Dec. 21, 2022), ECF No. 35 ................ 3

*Hardaway v. Nigrelli*, No. 22-2933 (Dec. 7, 2022), ECF No. 54 .............. 3

## PRELIMINARY STATEMENT

Plaintiffs are individuals and a firearms training business challenging aspects of Suffolk County's policies implementing New York's handgun licensing requirements, including those in the recently enacted Concealed Carry Improvement Act (CCIA). Plaintiffs contend that these policies and regulations prevent them from exercising their Second Amendment rights. The District Court for the Eastern District of New York (Brown, J.) denied plaintiffs' motion for a preliminary injunction and plaintiffs appealed.

In this motion, plaintiffs seek an injunction pending appeal (1) requiring Suffolk County to process applications for handgun licenses within thirty days of receiving an application and (2) prohibiting Suffolk County Police Department (SCPD) from arresting unlicensed applicants who complete the CCIA's concealed carry live-fire training requirement prior to obtaining a license.

Although plaintiffs have not sought relief against defendant-appellee Acting Superintendent of the New York State Police Steven Nigrelli, the State opposes plaintiffs' motion to the extent it seeks to enjoin enforcement of New York's licensing regulations on constitutional

grounds. As the State has authority to intervene in a case to defend the constitutionality of a state statute, the State should also be permitted to oppose a motion for interim relief when it seeks to enjoin state law. *See, e.g.*, 28 U.S.C. § 2403(b); *Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002, 1010-11 (2022); *Peruta v. County of San Diego*, 824 F.3d 919, 940 (9th Cir. 2016).

Here, plaintiffs' motion implicates the CCIA's training requirement for firearm licensing, *see* Penal Law § 400.00(1)(o)(iii), (19), and New York's law requiring licensing officers to act on an application for a handgun license within six months, *see id.* § 400.00(4-a). Plaintiffs have also indicated that they intend to challenge the constitutionality of provisions of the CCIA on appeal, as they did in the district court. *See* Appellants' Mot. for Expedited Appeal at 1, 8 (Mar. 6, 2023), CA2 ECF No. 17. However, the State takes no position on plaintiffs' motion to enjoin SCPD's policies to the extent that they differ from the requirements of New York's licensing regulations.

To the extent plaintiffs seek to enjoin the enforcement of any of New York's licensing requirements pending appeal, that relief should be denied for multiple reasons. Plaintiffs have not shown any of the prerequisites

for the extraordinary remedy of an injunction pending appeal. Plaintiffs are not likely to succeed on the merits of their claims because they lack standing to challenge New York's handgun licensing requirements, which are consistent with the Second Amendment. And the equities weigh strongly in favor of the continued enforcement of these important public safety measures.

This Court has repeatedly determined that injunctive relief pending appeal is not appropriate in numerous recent cases challenging provisions of the CCIA, including its licensing provisions, either by staying a preliminary injunction granted by the district court or by denying an injunction pending appeal where relief was denied below. *See* Order, *Antonyuk v. Hochul*, No. 22-2908 (Dec. 7, 2022), ECF No. 75; Order, *Hardaway v. Nigrelli*, No. 22-2933 (Dec. 7, 2022), ECF No. 54; Order, *Christian v. Nigrelli*, No. 22-2987 (Dec. 12, 2022), ECF No. 41; Order, *Gazzola v. Hochul*, No. 22-3068 (Dec. 21, 2022), ECF No. 35. This Court should reach the same result here.

## STATEMENT OF THE CASE

### A.    Statutory Background

New York law has long set forth basic eligibility criteria for a license to carry a concealed handgun in public, including being at least twenty-one years old, not having a felony record, and otherwise having "good moral character." *See* Penal Law § 400.00(1)(a)-(c). Until recently, New York also required demonstrating "proper cause" to obtain a concealed-carry license. *Id.* § 400.00(2)(f) (effective through June 23, 2022). In *New York State Rifle & Pistol Association v. Bruen*, the U.S. Supreme Court concluded that insofar as "proper cause" demanded showing "a special need for self-defense," this requirement infringed the Second Amendment right of law-abiding, responsible citizens to carry arms in public for self-defense, since it was not "consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. 2111, 2122, 2130-31 (2022).

*Bruen* recognized the necessity and constitutionality of modern firearms regulation, explicitly clarifying that "nothing in [its] analysis" was meant "to suggest the unconstitutionality" of "shall-issue" licensing regimes. *Id.* at 2138 n.9. These laws "often require applicants to undergo

a background check or pass a firearms safety course" and "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).

On July 1, 2022, New York's Legislature passed the CCIA. *See* Ch. 371, 2022 N.Y. Laws (N.Y. Legis. Retrieval Sys.) (eff. Sept. 1, 2022). As relevant here, the CCIA made more precise the longstanding requirement of "good moral character" for a handgun license; this is the provision under which the State has denied licenses to people with criminal records and other evidence of a propensity for violence. The CCIA defined the term "good moral character" to mean "having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others." Penal Law § 400.00(1)(b).

The CCIA also imposed new licensing requirements. Applicants are required to complete sixteen hours of training and two hours of live-fire instruction, *id.* § 400.00(1)(o)(iii), (19). While undergoing live-fire training, applicants are exempted from liability for unlicensed carry if they are supervised by a duly authorized instructor. *Id.* § 265.20(a)(3-a).

5

Every applicant is required to "meet in person with the licensing officer for an interview," *id.* § 400.00(1)(o), and to submit statutorily specified information, including the identity of other adult household members, disclosure of whether minor children live in their home, character references, a listing of social media accounts, and other information determined to be reasonably necessary, *id.* § 400.00(1)(o)(i)-(v). Local governments may establish additional requirements. *Id.* § 400.30.

## B. Procedural History

Plaintiffs Zachary Giambalvo, Shane Mashkow, Kevin McLaughlin, and John Mougios are individuals residing in Suffolk County who have initiated the process to apply for a concealed-carry handgun license by submitting an "applicant questionnaire" to SCPD, as required by SCPD. Their applications have not yet been adjudicated. Plaintiffs each contend that they do not intend to comply with certain CCIA requirements during the application process, including the training requirement, the disclosure of statutorily required information, and the in-person interview. (*See* Am. Compl. (Compl.) at 32, 36-37, 39 (Oct. 28, 2022), EDNY ECF No. 13.) Plaintiff Michael McGregor obtained a restricted license for hunting and target shooting before the CCIA was enacted. He has applied for an

6

amendment to obtain an unrestricted license, which similarly has not been adjudicated. He also contends that he will not comply with the CCIA's license requirements if required to do so. (*See id.* at 42.) Finally, Frank Melloni, the owner of Renaissance Firearm Instruction, Inc. (RFI), intends to provide CCIA-mandated live-fire instruction to applicants seeking handgun licenses and contends that he has been injured by Suffolk County's alleged policy of prohibiting applicants without a license from engaging in live-fire training. (*Id.* at 43-44.)

Plaintiffs commenced this action against Suffolk County and its officials on August 15, 2022, challenging several aspects of the County's handgun licensing policies. On November 17, 2022, plaintiffs amended their complaint to add claims against Acting Superintendent of the New York State Police Steven Nigrelli. As relevant here, plaintiffs' amended claims challenged provisions of the CCIA's licensing requirements as facially invalid, including the "good moral character" requirement, the training requirement, the in-person interview, and the requirement that an applicant submit statutorily required information. *See* Penal Law § 400.00(1)(b), (1)(o), (19). Plaintiffs also challenged the CCIA provision

7

permitting local regulations that establish additional requirements. *Id.* § 400.30. (*See* Compl. at 46-48.)

In addition, plaintiffs challenged aspects of New York's licensing scheme predating the CCIA, including the requirement that licensing officers act on an application for a license within six months of receiving it or give the applicant written notice of the reason for the delay, Penal Law § 400.00(4-a),[1] and the provision declaring it a misdemeanor to violate any provisions of New York's licensing regulations, *id.* § 400.00(15). (*See* Compl. at 46-48.)

On December 11, 2022, plaintiffs moved for a preliminary injunction against the County enjoining enforcement of these provisions and certain county policies. The district court denied the motion, concluding that plaintiffs lacked standing and were unlikely to succeed on the merits of their claims because they had not applied for a license and been denied, nor had they shown that applying would be futile. Plaintiffs also failed to establish that they faced an imminent risk of arrest, as required for a

---

[1] On April 1, 2023, when the CCIA's amendment to Penal Law § 400.00(4-a) comes into effect, the six-month requirement will be renumbered as Penal Law § 400.00(4-b). *See* Ch. 371, §§ 1, 26(g), 2022 N.Y. Laws, pp. 1, 20-21.

pre-enforcement challenge to state law. Moreover, because plaintiffs had not sued the district attorney, the only party with the power to prosecute plaintiffs, they could not seek an injunction prohibiting prosecution. Finally, the court concluded that plaintiffs Frank Melloni and RFI failed to show irreparable harm, because they had asserted only economic loss.

Plaintiffs filed a notice of appeal on February 16, 2023, and sought an injunction pending appeal in the district court, which was denied. (*See* Order (Feb. 21, 2023).) Plaintiffs filed this motion more than a week later, on March 2, 2023.[2]

---

[2] Plaintiffs did not notify the State that this motion was forthcoming, as required by Local Rule 27.1(b). In addition, plaintiffs submitted a declaration and exhibits in support of their motion for an injunction pending appeal that contain information not previously filed with the district court. *See* Appellants' Mot. for Inj. Pending Appeal (Mot.), Ex. 8 (Decl. of Joseph A. Terrusa), CA2 ECF No. 13; Mot. at 6-7. Such materials are not part of the record on appeal. *See Keil v. City of New York*, No. 21-3043(L), 2022 WL 619694, at *4 n.6 (2d Cir. Mar. 3, 2022) (summary order).

# ARGUMENT

## PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION PENDING APPEAL

Any injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). And to obtain preliminary relief pending appeal where it has been denied in the district court, the standard is higher: A movant must make a strong showing of likelihood of success on the merits. *See Agudath Israel of Am. v. Cuomo*, 979 F.3d 177, 180 (2d Cir. 2020); *see also Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010); *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020). The movant must also demonstrate that it will suffer irreparable harm absent relief and that an injunction is in the public interest. *See Agudath Israel of Am.*, 979 F.3d at 180.

Plaintiffs' motion for an injunction pending appeal seeks two forms of relief: (1) an injunction requiring Suffolk County to process applications for handgun licenses within thirty days of receiving an application and (2) an injunction prohibiting Suffolk County officials from arresting or charging applicants for completing the CCIA's live-fire instruction

10

requirement—and thus necessarily carrying a handgun—prior to obtaining a handgun license.

Although plaintiffs have not sought injunctive relief against the State as part of this motion, the State has the right to oppose challenges to the constitutionality of state statutes. *See, e.g.*, 28 U.S.C. § 2403(b); *Cameron*, 142 S. Ct. at 1010-11; *Peruta*, 824 F.3d at 940. Plaintiffs' request for relief implicates the training requirement of the CCIA, Penal Law § 400.00(1)(o)(iii), (19), and the provision of New York law requiring licensing officers to act on an application for a handgun license within six months, *id.* § 400.00(4-a). To the extent plaintiffs' motion seeks to enjoin the enforcement of any of New York's handgun licensing regulations, it should be denied because plaintiffs lack standing to challenge New York's regulations and have offered no persuasive argument that these provisions are unconstitutional.

**A.  Plaintiffs Lack Standing to Challenge New York's Licensing Requirements.**

Plaintiffs have not shown a strong likelihood of success on the merits of their claims because, as the district court concluded, they lack standing to challenge New York's licensing requirements. This Court has

repeatedly held that to establish standing to challenge a firearms licensing regulation, an applicant must either have applied for and been denied a license or make a substantial showing that his or her application would have been futile. *See Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020), *abrogated in part on other grounds by Bruen*, 142 S. Ct. 2111; *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012). Plaintiffs have done neither.

None of the plaintiffs has applied for and been denied a license. Although Zachary Giambalvo, Shane Mashkow, Kevin McLaughlin, and John Mougios have initiated the process of applying for a license by submitting SCPD's applicant questionnaire, Giambalvo, Mashkow, and McLaughlin have not yet submitted complete applications. (*See* Compl. at 33, 38-39.) As for Mougios, he submitted a state license application form, the PPB-3, only on February 8, 2023, and that application has not yet been adjudicated. *See* Mot., Ex. 2 at 2 (Feb. 2023 Decl. of John Mougios), CA2 ECF No. 13. Plaintiff Michael McGregor applied for an amendment to his restricted license on August 15, 2022, and that request similarly has not been adjudicated. (Compl. at 42.) And plaintiffs Frank Melloni and RFI do not seek a concealed-carry license at all. Accordingly,

none of the plaintiffs has been denied a license at all, much less due to the challenged provisions.

Nor have plaintiffs established that applying for a license would be futile because of their hypothetical refusal to comply with the CCIA's requirements. "Mere objection or antipathy to the law does not constitute a showing of futility." *Libertarian Party of Erie County*, 970 F.3d at 116; *see Decastro*, 682 F.3d at 164.

Plaintiffs also lack standing to challenge Penal Law § 400.00(4-a), which requires licensing officers to act on an application within six months, because they have not been harmed by that provision. Plaintiffs' complaints about delay stem from their allegations that SCPD has failed to provide state license application forms and adjudicate their applications within six months. *See* Mot., Ex. 1 at 2-3 (Decl. of Zachary Giambalvo), CA2 ECF No. 13; Mot., Ex. 2 at 2-3; Mot., Ex. 3 at 3-4 (Decl. of Shane Mashkow), CA2 ECF No. 13; Mot., Ex. 4 at 2 (Decl. of Kevin McLaughlin), CA2 ECF No. 13. No plaintiff has alleged that he has been harmed by New York's six-month requirement.

**B.    New York's Licensing Requirements Are Constitutional.**

Even if plaintiffs had standing to challenge New York's licensing requirements, any challenge would fail on the merits. *Bruen* recognized that States retain wide latitude to confront the regulatory challenges posed by modern firearms, including authority to mandate licensing. Licensing requirements do not infringe on Second Amendment rights where they are "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens,'" 142 S. Ct. at 2138 n.9 (quoting *Heller*, 554 U.S. at 635), as is the case with New York's regulations. *Bruen* explicitly noted that "nothing" in its analysis was intended to suggest the unconstitutionality of shall-issue licensing regimes requiring applicants "to undergo a background check or pass a firearms safety course." *Id.*; *see also id.* at 2161 (Kavanaugh, J., concurring). Although the Court noted that "lengthy wait times in processing license applications" might give rise to a constitutional challenge, *id.* at 2138 n.9, plaintiffs have made *no* argument that a six-month time limit is unconstitutionally lengthy, *see* Mot. at 11. Indeed, plaintiffs' entire argument regarding the merits of their claims is four sentences long. *Id.*

14

Finally, plaintiffs are incorrect, as a historical matter, that licensing requirements are not supported by this nation's history of firearms regulation. *See* Mot. at 11. As now-Justice Barrett has concluded, the historical record confirms that a "legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety," *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting), whether the person "belongs to a dangerous category or bears individual markers of risk," *id.* at 451. New York's licensing requirements fall squarely into this historical tradition, as the State argued below. (*See* Def. Superintendent Nigrelli's Opp'n (State Opp'n) at 14-27, EDNY ECF No. 34.)

## C. Plaintiffs Have Not Shown Irreparable Harm and the Public Interest Weighs Against an Injunction.

Plaintiffs have also failed to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. As an initial matter, plaintiffs' inordinate delay undermines their claim of irreparable harm. The CCIA was enacted on July 1, 2022, and took effect on September 1, 2022, yet plaintiffs waited until December to seek injunctive relief. *See, e.g.*, *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,

423 F.3d 137, 144 (2d Cir. 2005). And to the extent plaintiffs challenge the six-month time limit in Penal Law § 400.00(4-a), that provision has been in place since 1980. *See* Ch. 233, § 15, 1980 N.Y. Laws 1166, 1170. Plaintiffs offer no explanation for their delay.

More fundamentally, plaintiffs have not been injured, much less irreparably, by New York's licensing requirements because none of them has been denied a license on the basis of the challenged CCIA provisions. See s*upra* at 13-14. Indeed, most of them have not even applied for a license. For that reason, plaintiffs' reliance on cases addressing injuries from the denial of a government-issued permit, Mot. at 14, is inapposite. And because most plaintiffs have not even applied for a license, they have not been harmed by the Penal Law's six-month requirement for adjudication of licenses; at most, plaintiffs contend that SCPD has failed to comply with the six-month requirement, which is no basis to enjoin enforcement of it.

In addition, the public interest weighs strongly against enjoining New York's handgun licensing requirements pending appeal. Plaintiffs are wrong that the analysis applicable to an injunction pending appeal has been altered by *District of Columbia v. Heller*, 554 U.S. 570 (2008),

16

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), or *Bruen*, 142 S. Ct. 2111. *See* Mot. at 18-19. Those decisions did not address a motion for an injunction pending appeal, which requires consideration of the equities. *Agudath Israel of Am.*, 979 F.3d at 180. The language cited by plaintiffs refers to means-ends balancing on the *merits* of a Second Amendment claim, which is not at issue here.

The relief sought by plaintiffs in this motion undermines the public interest in several respects. First, implementing even on a temporary basis a requirement that licensing officers adjudicate applications within thirty days would be severely disruptive. (*See* State Opp'n at 28-29.) Second, enjoining the enforcement of other provisions of the CCIA's licensing requirements would be detrimental to public safety because it could result in concealed-carry licenses being granted to people lacking "the essential character, temperament and judgement necessary to be entrusted with a weapon." Penal Law § 400.00(1)(b). In short, consistent with the Court's rulings in other CCIA-related appeals (see *supra* at 4), it should deny plaintiffs' request for an injunction here so as to permit the ongoing implementation and enforcement of New York's firearms-licensing laws.

17

## CONCLUSION

This Court should deny plaintiffs' motion for an injunction pending appeal.

Dated:  New York, New York
        March 13, 2023

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Appellee Nigrelli

By:  */s/ Sarah Coco*
     SARAH COCO
     Assistant Solicitor General

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
SARAH COCO
  *Assistant Solicitor General*
    *of Counsel*

28 Liberty Street
New York, NY 10005
(212) 416-6312

18

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 27 and 32 of the Federal Rules of Appellate Procedure, Oren L. Zeve, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this document, the document contains 3,245 words and complies with the typeface requirements and length limits of Rules 27(d) and 32(a)(5)-(6).

_/s/ Oren L. Zeve_

Oren L. Zeve