# 23-208

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆◆

ZACHARY GIAMBALVO, JOHN MOUGIOS, SHANE MASHKOW, KEVIN MCLAUGHLIN, MICHAEL MCGREGOR, FRANK MELLONI, RENAISSANCE FIREARMS INSTRUCTION, INC., and all similarly situated individuals,

*Plaintiffs-Appellants,*

—against—

SUFFOLK COUNTY, NEW YORK, POLICE COMMISSIONER RODNEY HARRISON, in his Official Capacity, MICHAEL KOMOROWSKI, Individually, ERIC BOWEN, Individually, WILLIAM SCRIMA, Individually, WILLIAM WALSH, Individually, THOMAS CARPENTER, Individually, SUPERINTENDENT STEVEN NIGRELLI, Acting Superintendent of the New York State Police, in his Official Capacity,

*Defendants-Appellees,*

JOHN DOES 1-5, Individually, JANE DOES 1-5, Individually,

*Defendants.*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES SUFFOLK COUNTY, NEW YORK, POLICE COMMISSIONER RODNEY HARRISON, MICHAEL KOMOROWKI, ERIC BOWEN, WILLIAM SCRIMA, WILLIAM WALSH, AND THOMAS CARPENTER

DENNIS M. BROWN
    *Acting Suffolk County Attorney*
SUFFOLK COUNTY
    ATTORNEY'S OFFICE
H. Lee Dennison Building
100 Veterans Memorial Highway
PO Box 6100
Hauppauge, New York 11788
(631) 853-4049

*By:* ARLENE S. ZWILLING

*Attorneys for Suffolk County
    Defendants-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... ii

ISSUES PRESENTED FOR REVIEW ................................................. 1

STATEMENT OF THE CASE .............................................................. 1

SUMMARY OF ARGUMENT ............................................................. 6

LEGAL STANDARD ........................................................................... 7

POINT I
DISTRICT COURT CORRECTLY DETERMINED
THAT THE APPLICANTS LACK STANDING ................................... 8

POINT II
SINCE THE APPLICANTS LACK STANDING, THE LOWER COURT
DID NOT ABUSE ITS DISCRETION BY DECLINING TO FURTHER
EXAMINE THE MERITS OF THEIR CLAIMS ................................. 11

    A.   The Applicants Lack Standing to Pursue Their Non-Meritorious
        Challenge to Purported Delays in the County's Licensing Process ........ 11

    B.   District Court Did Not Engage in Speculation by Concluding
        That the Applications Would be Denied Because the Applicants
        Refused to Fulfill the Application Requirements .................................... 13

POINT III
DISTRICT COURT DID NOT IMPROPERLY CONFLATE
THE ISSUES OF THE LIKELIHOOD OF SUCCESS AND
THE LIKELIHOOD THAT THE COUNTY WOULD
GRANT THE APPLICANTS LICENSES ........................................... 15

POINT IV
THE COMMERCIAL PARTIES HAVE NO
LEGALLY PROTECTED INTEREST ............................................... 16

i

POINT V
IT WAS NOT AN ABUSE OF DISCRETION FOR
DISTRICT COURT TO DECLINE TO ENJOIN THE
ALLEGED ARREST POLICY .........................................................18

   A.   The Lower Court Did Not Fail to
       Credit Appellants' Declarations............................................18

   B.   Appellants Are Not Entitled to an Injunction Against
       The County's Alleged Threatened Arrests and Prosecutions .............19

   C.   Appellants Have Failed to Show a Credible
       Threat of Enforcement .........................................................19

POINT VI
THE APPLICANTS ARE NOT AFFECTED BY THE
ALLEGED PROCESSING DELAYS ..................................................20

CONCLUSION ..................................................................................21

# TABLE OF AUTHORITIES

*Amore v. Novarro*,
624 F.3d 522 (2d Cir. 2010) .................................................................................3

*Antonyuk v. Hochul*,
2022 WL 16744700 (N.D.N.Y. Nov. 7, 2022).......................................................9

*Baez v. Hennessy*,
853 F.2d 73 (2d Cir. 1988) ..................................................................................17

*Beal v. Stern*,
184 F.3d 117 (2d Cir. 1999) ..................................................................................8

*Cayuga Nation v. Tanner*,
824 F.3d 321 (2d Cir. 2016) ................................................................................20

*D.C. v. Heller*,
554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) ............................ 14, 16

*Does 1-10 v. Suffolk Cnty., New York*,
2021 WL 2634734 (E.D.N.Y. June 26, 2021).................................................5, 17

*Gazzola v. Hochul*,
2022 WL 17485810 (N.D.N.Y. Dec. 7, 2022) .....................................................16

*Jolly v. Coughlin*,
76 F.3d 468 (2d Cir. 1996) ....................................................................................7

*Juzumas v. Nassau Cnty., New York*,
33 F.4th 681 (2d Cir. 2022) ...................................................................................3

*King v. Innovation Books, a Div. of Innovative Corp.*,
976 F.2d 824 (2d Cir. 1992) ..................................................................................7

*Knife Rts., Inc. v. Vance*,
802 F.3d 377 (2d Cir. 2015) ................................................................................20

*Loria v. Gorman*,
 306 F.3d 1271 (2d Cir. 2002) ................................................................19

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ...................10

*Mazurek v. Armstrong*,
 520 U.S. 968, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) .....................8

*Monell v. Dep't of Soc. Servs. of City of New York*,
 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) .........................2

*N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*,
 883 F.3d 32 (2d Cir. 2018) ....................................................................17

*New York ex rel. Schneiderman v. Actavis PLC,*
 787 F.3d 638 (2d Cir. 2015) ..................................................................17

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
 213 L. Ed. 2d 387, 142 S. Ct. 2111 (2022) ............................. 3, 14, 21

*No Spray Coal., Inc. v. City of New York*,
 252 F.3d 148 (2d Cir. 2001) ....................................................................8

*Range v. Att'y Gen. United States*,
 53 F.4th 262 (3d Cir. 2022) ...................................................................14

*Salinger v. Colting*,
 607 F.3d 68 (2d Cir. 2010) .......................................................................7

*SG Cowen Sec. Corp. v. Messih*,
 224 F.3d 79 (2d Cir. 2000) .......................................................................7

*Shuttlesworth v. City of Birmingham, Ala*.,
 394 U.S. 147, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969) .........................10

*Sorokti v. City of Rochester*,
 2022 WL 2356757 (W.D.N.Y. June 30, 2022) .......................................3

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014) ........................... 10, 19

*United States v. Decastro*,
  682 F.3d 160 (2d Cir. 2012) .............................................................. 8, 11, 12, 21

*Vives v. City of New York*,
  524 F.3d 346 (2d Cir. 2008) ................................................................................3

*We The Patriots USA, Inc. v. Hochul*,
  17 F.4th 266 (2d Cir.) ......................................................................................16

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ........................................7

*Woodstock Ventures, LC v. Woodstock Roots LLC*,
  837 F. App'x 837 (2d Cir. 2021) .........................................................................7

## ISSUES PRESENTED FOR REVIEW

1.      Whether District Court abused its discretion in declining to preliminarily enjoin Suffolk County's concealed carry licensing process in light of appellants' refusal to comply with the New York State license application requirements.

2.      Whether District Court abused its discretion in declining to preliminarily enjoin Suffolk County's alleged policy of arresting and prosecuting live- fire trainees and instructors where no appellant was arrested or prosecuted and appellants failed to show that there was a substantial risk of arrest or prosecution.

3.      Whether District Court abused its discretion in denying preliminary injunctive relief to the commercial appellants, a company that conducts live- fire training and its President, as their claims were derivative, purely economic, of modest value and compensable by money damages.

## STATEMENT OF THE CASE

Plaintiffs-appellants ("appellants") commenced this action on August 15, 2022 by the filing of their Complaint for Injunctive and Declaratory Relief in the United States District Court for the Eastern District of New York (DE.1).[1] The Complaint set forth claims on behalf of appellants Zachary Giambalvo ("Giambalvo"), John Mougios ("Mougios"), Shane Mashkow ("Mashkow"), Kevin

---

[1]      ("DE. __") refers to the District Court docket entry number.

1

McLaughlin ("McLaughlin") and Michael McGregor ("McGregor") (collectively, "the applicants"), as well as appellants Frank Melloni and Renaissance Firearms Instruction, Inc. (collectively, "the commercial parties"). On November 17, 2022, appellants filed their Amended Complaint (with corrected caption) ("the Amended Complaint") (A.12-60).

The Amended Complaint contained claims under 42 U.S.C. § 1983 for the alleged violation of appellants' constitutional rights under the Second and Fourteenth Amendments, along with a claim pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). More specifically, appellants asserted that defendants-appellees the County of Suffolk (sued herein as "Suffolk County, N.Y."), and Suffolk County Police Department personnel Rodney Harrison (in his official capacity) Michael Komorowski, Eric Bowen, William Scrima, William Walsh and Thomas Carpenter (collectively, "the County") were violating their constitutional rights by maintaining certain policies and practices that slowed down the license application process for "concealed carry" licenses. They also claimed that the County had a policy of subjecting unlicensed individuals who participate in live-fire training with duly certified instructors, and the instructors, to criminal penalties including arrest and prosecution. Further, they alleged that certain portions of the Concealed Carry Improvement Act ("CCIA"), an omnibus legislative amendment to the laws of New

2

York State enacted in the wake of the Supreme Court's opinion in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 213 L. Ed. 2d 387, 142 S. Ct. 2111 (2022) ("*Bruen*"), are unconstitutional.[2]

On November 18, 2022, summonses were issued directed to the County and thereafter served (DE.14-23).

Appellants then filed an Order to Show Cause seeking a preliminary injunction. They sought a mandatory preliminary injunction directing the Suffolk County Police Department to pass upon pistol license applications within 3 months of the submission of the completed New York State mandated license form known as the PPB-3. They also sought to enjoin what they assert is the County's policy of subjecting unlicensed individuals who participate in live-fire training with duly

---

[2]    To the extent that the County of Suffolk is implementing mandatory state law by carrying out the CCIA, it cannot be considered a violator of plaintiffs' constitutional rights. *Vives v. City of New York*, 524 F.3d 346, n.4 (2d Cir. 2008) (holding that a municipality is not liable under § 1983 for a decision to honor its obligation to enforce state law). See *Juzumas v. Nassau Cnty., New York*, 33 F.4th 681 (2d Cir. 2022) (Under *Vives*, municipality not liable under § 1983 for decision to enforce N.Y. Penal Law § 400.00) Relatedly, an individual employee is entitled to qualified immunity for enforcing a state statute that has not been struck down as unconstitutional. *Amore v. Novarro*, 624 F.3d 522 (2d Cir. 2010) (officer who makes an arrest under erroneous belief that loitering statute still in effect entitled to qualified immunity). See also *Sorokti v. City of Rochester*, 2022 WL 2356757, at *6 (W.D.N.Y. June 30, 2022) (officer entitled to qualified immunity for making arrest pursuant to existing emergency order still "on the books"). Accordingly, the County refrains from addressing the constitutionality of the CCIA at this time, although the statutory scheme is certainly constitutional.

certified instructors, and the instructors, to criminal penalties including arrest and prosecution. As appellants challenged the constitutionality of the CCIA, they also sought preliminary injunctive relief against defendant-appellee Steven Nigrelli, Acting Commissioner of the New York State Police (A.67-124).

In sworn statements submitted in support of the motion, each of the applicants attested that they had not and would not comply with various requirements of the CCIA for obtaining a license. Giambalvo attested that he would not provide the necessary social media information, identify his cohabitants, or submit to an interview (A.93-99). Mougios stated that he refused to attend the requisite firearms training, provide character references, information about his social media accounts and family, or submit to an interview (A.101-104). Mashkow swore that he would not disclose personal information, be interviewed, or take firearms training (A.105-108). McLaughlin indicated that he "objected" to all the CCIA requirements and would not comply with the firearms training requirement (A109-111). McGregor stated that he would not disclose information regarding his social media accounts or the names of his cohabitants (A.112-116). In his statement in support of the motion, appellant Melloni indicated that he is a firearms training instructor and the President of appellant Renaissance Firearms Instruction, Inc. (A.117-121).

By Memorandum and Order dated February 14, 2023, District Court, the Hon. Gary R. Brown presiding, denied appellants' application for a preliminary injunction (A.210-224).

Judge Brown reasoned that by "unequivocally express[ing] their intent, in sworn declarations, to refuse to comply with various requisites of New York's handgun permit process," the applicants had "undermined any showing of a likelihood of success on the merits." Accordingly, the Court below held that they lacked standing to pursue their claims (A.216-220).

District Court also concluded that the applicants lacked standing to challenge the arrests and prosecutions they claimed to be threatened with since they "failed to articulate a sufficiently tangible threat of arrest" and because in the State of New York, an application to enjoin a prosecution must be sought against the state instead of a county. In making this ruling, District Court observed "[n]otably, this is not the first time that plaintiff's counsel has sought such relief from this Court," referring to *Does 1-10 v. Suffolk Cnty., New York*, 2021 WL 2634734 (E.D.N.Y. June 26, 2021), *aff'd sub nom. Does 1 - 10 v. Suffolk Cnty., New York*, 2022 WL 2678876 (2d Cir. July 12, 2022), where an injunction against the County's claimed policy of threatened arrests and prosecution of firearms owners was sought and denied for essentially the same reason (A.220-224).

As for the commercial parties, the Court below held that, assuming they have standing (which Judge Brown observed "seems dubious"), their commercial claims are derivative and compensable by money damages (A.219-220).

On February 16, 2023, appellants filed a Notice of Interlocutory Appeal from District Court's denial of their Motion for a Preliminary Injunction (A.225-226). On February 17, 2023, they filed a Motion for Preliminary injunction pending their interlocutory appeal to this Court. The motion was denied on February 21, 2023 (DE. after no. 44). On March 2, 2023, appellants filed a Motion for an Injunction Pending Appeal before this Court, followed by a Motion to Expedite Appeal on March 6, 2023. By Order dated April 25, 2023, appellants' request for an injunction was denied and their motion to expedite granted.

Appellants then filed their brief in support of their interlocutory appeal. The County submits this brief in opposition to the appeal.

## SUMMARY OF ARGUMENT

District Court did not abuse its discretion in holding that the applicants lacked standing to challenge the County's alleged handgun licensing process since by refusing to comply with the application requirements of the CCIA, they rendered themselves ineligible to receive licenses. Nor did it erroneously decline to grant appellants preliminary injunctive relief against the County's supposed policy of threatening to arrest and prosecute live-fire trainees and their instructors given that

no appellant had been arrested or prosecuted and they had failed to show that there was a substantial risk of such action.

District Court likewise did not abuse its discretion in determining that the commercial parties were not entitled to preliminary injunctive relief as their claims were derivative, economic in nature and compensable by money damages.

## LEGAL STANDARD

A District Court's grant or denial of a preliminary injunction is reviewed for abuse of discretion. *Woodstock Ventures, LC v. Woodstock Roots LLC*, 837 F. App'x 837, 838 (2d Cir. 2021) citing *SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 81 (2d Cir. 2000). "Such an abuse of discretion ordinarily consists of either applying an incorrect legal standard or relying on a clearly erroneous finding of fact." *Woodstock Ventures, LC,* 837 F. App'x at 838 quoting *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) (quoting *King v. Innovation Books, a Div. of Innovative Corp.*, 976 F.2d 824, 828 (2d Cir. 1992)).

The standard for a grant of a preliminary injunction is "demanding." *Woodstock Ventures, LC*, 837 F. App'x at 838. "[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. quoting *Salinger v. Colting*, 607 F.3d 68, 79 (2d Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). Such relief should not be granted "unless the

movant, by a clear showing, carries the burden of persuasion." *Id.* quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997).

The appellate court is free to affirm the denial of a preliminary injunction "on any ground [that] finds support in the record." *No Spray Coal., Inc. v. City of New York*, 252 F.3d 148, 150 (2d Cir. 2001) quoting *Beal v. Stern*, 184 F.3d 117, 122 (2d Cir. 1999).

**POINT I**
**DISTRICT COURT CORRECTLY DETERMINED**
**THAT THE APPLICANTS LACK STANDING**

The applicants offer a smorgasbord of arguments as to why they purportedly have standing despite the fact that without exception, they each freely chose not to fulfill all steps of the licensing process, making it impossible for them to obtain licenses.[3]

First, they contend that because they have not declined to comply with every licensing requirement, the principles of *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) confer standing upon them. Clearly, *Decastro* does not remotely suggest that a potential handgun license applicant who initiates the licensing process

---

[3]     While District Court noted only that the applicants' refusal to comply with the CCIA prerequisites to issuance of a license barred their challenge to New York State's statutory licensing scheme, their refusal also necessarily precludes their challenges to the County's alleged practices as well, since the state's licensing statutes form the framework for the issuance of all licenses statewide. *N.Y. Penal Law § 400.00.*

but unequivocally declares their refusal to complete it has standing to challenge the licensing process.

Second, the applicants attempt to analogize themselves to the plaintiffs in *Antonyuk v. Hochul*, 2022 WL 16744700, at \*11 (N.D.N.Y. Nov. 7, 2022), *reconsideration denied sub nom. Antonyuk v. Nigrelli*, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022), who were considered to have standing because they faced license processing delays of more than one year at the time they sought injunctive relief, rendering their applications futile. No such analogy can be drawn since no applicant asserts that they have been subject to such lengthy delays. At the time he signed his Declaration in support of the motion to District Court for a primary injunction, Giambalvo's application had been pending for approximately 4 months McLaughlin's declaration, which is unsigned, is also dated approximately 4 months after his application. McGregor's request to amend his license had been pending for approximately 10 months at the time he executed his declaration.[4] Giambalvo, Mougios and Mashkow all submitted their applications for full carry licenses prior to *Bruen's* nullification of New York state's restrictions on concealed carry permits.

---

[4]     As the applicants sue only for alleged violations of their constitutional rights, and make no claim that the County is failing to determine license applications within the six-month period of spoken of in N.Y. Penal Law § 400.00 (4-a), the question of whether the County is in compliance with that statutory provision is not raised in this action. In any event, plaintiffs seek to preliminarily mandate the determination of applications within 3 months, half of the N.Y. State statutory period.

McGregor filed his request to amend to "full carry" pre-*Bruen* (A.97, 104, 108, 111, 1116).

Next, the applicants theorize that it would be futile for them to comply with the licensing process because, as District Court concluded, they cannot qualify for a permit since they have not complied. Suffice it to say that this blatantly circular argument is untenable.

Last, they assert that the Supreme Court's opinion in *Shuttlesworth v. City of Birmingham, Ala*., 394 U.S. 147, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969) eliminates all requirement that they attempt to comply with the licensing process because the CCIA is unconstitutional. *Shuttlesworth* was grounded on "many decisions" of the Supreme Court over a span of thirty years, constituting a "long line" of its decisions that made clear that the challenged statute was unconstitutional. *Id*. at 150–151. Contrastingly, while some District Courts have identified what they view as infirmities in the statutory scheme, this Court, let alone the Supreme Court, have yet to find the CCIA as a whole to transgress constitutional bounds.

Given that the applicants' deliberate actions have rendered them ineligible for pistol licenses, they can suffer no injury in fact attributable to the County. They therefore lack standing to seek to enjoin the County's actions. See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561, 112 S. Ct. 2130, 119 L.

Ed. 2d 351 (1992) (internal quotation marks omitted) (plaintiff must show an "injury-in-fact" to establish Article III standing). See also *Decastro*, 682 F.3d at 164 (plaintiff who has not applied for a gun license in New York has no standing to challenge state's licensing laws).

**POINT II**
**SINCE THE APPLICANTS LACK STANDING,**
**THE LOWER COURT DID NOT ABUSE ITS DISCRETION**
**BY DECLINING TO FURTHER EXAMINE THE**
**MERITS OF THEIR CLAIMS**

**A.    The Applicants Lack Standing to Pursue Their Non-Meritorious Challenge to Purported Delays in the County's Licensing Process.**

The applicants seek a mandatory injunction directing the County to pass on license applications within 30 days of the *initiation* –not completion- of the licensing process. They argue that District Court disregarded the County's purported processing delays and speculated that their applications would be denied, thereby abusing its discretion.

Inarguably, no authority interprets the Second or Fourteenth Amendment as fixing the thirty-day time limit that the applicants demand, and tellingly, they point to none. While the Supreme Court appears to have intentionally left the door open to a prohibition of "lengthy wait times" *Bruen* at 2138, n. 9. ("...we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications…. deny ordinary citizens their right to

public carry"), neither the High Court nor this Honorable Court have determined precisely how long is too long.

That perhaps processing time could be shorter is no basis for the preliminary equitable relief sought by the applicants. Their claims are made pursuant to § 1983, the statute that safeguards constitutional rights. The Constitution does not affirmatively guarantee a speedy or optimal level of government service. Likewise, since the applicants raise claims only under §1983, the question of whether the CCIA or other New York State law requires faster license processing is not present in this litigation.

Moreover, at the risk of repetition, to have standing to challenge licensing procedures, a New York plaintiff must show that they have complied with the system's requisites. *U.S. v. Decastro*, 682 F.3d 160, 64 (2d Cir. 2012) (plaintiff who does not submit to a government policy has no standing to challenge the policy as unconstitutional). However, as a matter of questionable principle, the applicants "refuse to comply with the various requisites" of the state mandated licensing process, ensuring that they cannot obtain licenses (A.216-219). Since the County cannot lawfully issue licenses to persons who refuse to comply with the CCIA, the applicants cannot receive permits from the County regardless of how long they wait. For this reason, their decision not to comply with the State prerequisites for a license

also deprives them of standing to pursue their claim of processing delays by the County.

**B.    District Court Did Not Engage in Speculation by Concluding That the Applications Would Be Denied Because the Applicants Refused to Fulfill the Application Requirements.**

The applicants also charge that District Court engaged in speculation by concluding that their applications would be denied due to their refusal to comply with the prerequisites of the CCIA. According to them, because the CCIA is unconstitutional, denial is not inevitable because the County can and should ignore its requirements and grant them licenses.

This contention is totally unsound. It should go without saying the local governments and their officials are not free to disregard laws enacted by a superior level of government at their own discretion. Municipal governments are not empowered to make their own interpretations of whether a particular state statute passes constitutional muster. The CCIA is the exclusive statutory regimen established by the State of New York for the issuance of licenses to carry handguns applicable to all localities throughout the state. Respect for law and legal process requires that all municipalities in the state and their officers comply unless and until a Court of competent jurisdiction instructs them otherwise.

Alternatively, the applicants assert that District Court speculated in concluding that their applications would be denied as a result of incidents in their

backgrounds. This contention is also easily disposed of. The language and structure of the Memorandum and Order make clear that the lower court made no assessment of the effect that the applicants' personal histories would have on a license application if they complete the application process. Plainly, the applicants' backgrounds are mentioned only in passing, in a footnote, to note that their claims that their backgrounds present no prohibitors to their being licensed is disputed and possibly inaccurate. Negative matters in an applicant's personal history remain relevant to their application for a handgun license. While granted, "may issue" licensing schemes are no longer permissible after *Bruen*, that does not now entitle all comers to a license. As District Court reasoned, the Second Amendment right to possess and carry handguns is expressly limited to "ordinary, law-abiding, adult citizens" *Bruen* at 142 S.Ct. 2111, 2119, and the right to bear arms in public is "subject to certain reasonable, well –defined restrictions." *Id*. at 2156 (A.217). See also *Range v. Att'y Gen. United States*, 53 F.4th 262, 284 (3d Cir. 2022), *reh'g en banc granted, opinion vacated sub nom. Range v. Att'y Gen. United States of Am.,* 56 F.4th 992 (3d Cir. 2023) citing *Bruen*, 142 S. Ct. at 2122; and *D.C. v. Heller*, 554 U.S. 570, 635, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) ("We believe the Supreme Court's repeated characterization of Second Amendment rights as belonging to 'law-abiding' citizens supports our conclusion that individuals convicted of felony-

equivalent crimes, like [plaintiff], fall outside 'the people' entitled to keep and bear arms.")

## POINT III
## DISTRICT COURT DID NOT IMPROPERLY CONFLATE
## THE ISSUES OF THE LIKELIHOOD OF SUCCESS
## AND THE LIKELIHOOD THAT THE COUNTY
## WOULD GRANT THE APPLICANTS LICENSES

The applicants' volitional refusal to comply with the CCIA's prerequisites for obtaining a license guarantees that the County cannot, should not, and will not give them concealed carry licenses. In voluntarily choosing to make themselves ineligible for licenses, they deliberately and knowingly rendered their challenges to the licensing process completely academic.

Thus, District Court did not improperly conflate the questions of whether they are likely to succeed on the merits with the question of whether of the County is likely to grant them licenses. The questions are inextricably linked. The County will not ignore New York State law and grant licenses to persons who decline to comply with the CCIA application prerequisites, the applicants' invitation to do so notwithstanding. The applicants cannot receive handgun licenses anywhere in the State of New York because they will not complete the State's application process. Their choice not to complete the process ensures they cannot prevail on the merits of their challenges to both New York State's statute and alleged County policy.

**POINT IV**
**THE COMMERCIAL PARTIES HAVE NO**
**LEGALLY PROTECTED INTEREST**

The court below denied preliminary relief to the commercial parties on the ground that they could not demonstrate a threat of irreparable harm as their claims are derivative of those made by the applicants, and also purely economic in nature, of modest value, and compensable in money damages. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir.), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021), and *cert. denied sub nom. Dr. A. v. Hochul*, 213 L. Ed. 2d 1126, 142 S. Ct. 2569 (2022) (economic harms are compensable in money damages). This determination was eminently correct because the Second Amendment protects only the right of individual persons to possess and carry guns. *Gazzola v. Hochul*, 2022 WL 17485810, at *14 (N.D.N.Y. Dec. 7, 2022) *writ of injunction denied* 2023 WL 221511 (Mem) January 18, 2023) citing *D.C. v. Heller*, 554 U.S. 570, 592, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) ("Nowhere else in the Constitution does a 'right' attributed to 'the people' refer to anything other than an individual right.... [W]e find that [the Second Amendment] guarantee[s] the individual right to possess and carry weapons in case of confrontation."). The pre-*Bruen* cases relied on by the commercial parties do not recommend a contrary constitutional interpretation.

In any event, a demonstration that irreparable harm is likely is obviously not the only showing that a movant for a preliminary injunction must make. Before such

equitable relief can be granted, the applicant must also establish "either a likelihood of success on the merits, or both serious questions on the merits and a balance of hardships decidedly favoring the moving party" and "that a preliminary injunction is in the public interest." *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36–37 (2d Cir. 2018) citing *New York ex rel. Schneiderman v. Actavis PLC, 787* F.3d 638, 650 (2d Cir. 2015). The commercial parties do not meet either of these two additional criteria.

In particular, the County's supposed intention to arrest unlicensed persons who take the live-fire training course and those who teach it does not pose the likelihood of irreparable harm to the commercial plaintiffs. The applicants, upon whose claims the commercial parties' claims piggyback, do not have standing to enjoin the County's alleged policy of arrest and prosecution for the same reasons affirmed by this Court in *Does 1-10 v. Suffolk Cnty., New York*, 2021 WL 2634734 (E.D.N.Y. June 26, 2021), *aff'd sub nom. Does 1 - 10 v. Suffolk Cnty., New York,* 2022 WL 2678876 (2d Cir. July 12, 2022). Further, as District Court reasoned, appellants' request to enjoin predicted prosecutions is incorrectly directed at the County. In New York, local district attorneys act on behalf of the state, not the counties, in conducting prosecutions. *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), and thus the request for an injunction should have been directed at the State.

17

Lastly, it cannot be overlooked that no appellant claims to have been arrested or prosecuted.

**POINT V**
**IT WAS NOT AN ABUSE OF DISCRETION**
**FOR DISTRICT COURT TO DECLINE TO ENJOIN**
**THE ALLEGED ARREST POLICY**

**A.     The Lower Court Did Not Fail to Credit Appellants' Declarations.**

Appellants' assertion that the court below failed to take their Declarations as true is simply inaccurate.

Judge Brown did not pass upon the truth of their factual claims. Rather, District Court assumed their allegations were true, but nevertheless found them insufficient to support preliminary injunctive relief.  It denied appellants' request to enjoin the alleged County arrest policy because "there [was] nothing suggesting that any plaintiff has been arrested or prosecuted or that there is otherwise a substantial risk of such action." Indeed, the lower court noted that in contrast to the written correspondence sent to plaintiffs in *Does 1-10* indicating that they might be subject to arrest and prosecution, appellants had shown "a far less concrete threat" in that they did not present any evidence other than "stray comments allegedly made by individual law enforcement officers" (A.220-224).

This circumstance is not altered by the Declaration of Joseph Terrusa. Terrusa did not attest that he was arrested or prosecuted, or even personally threatened with arrest or prosecution. Moreover, his Declaration was not before District Court and

18

this Court has already indicated in its April 25, 2023 Order, that under *Loria v. Gorman*, 306 F.3d 1271, 1280 n.2 (2d Cir. 2002), it normally does not consider material not part of the record on appeal.

**B.    Appellants Are Not Entitled to an Injunction Against the County's Alleged Threatened Arrests and Prosecutions.**

Appellants appear to suggest that District Court erred in not enjoining the County's policy of threatening to arrest live-fire trainees and instructors (as distinct from its asserted policy of prosecuting them), because it is not a state policy, but a supposedly rogue policy of the County.

The proffered distinction between local and state policy is of no moment. District Court correctly held that appellants lacked standing to challenge the alleged policy because they failed to come forward with any evidentiary material showing that any of them "[had] been arrested or prosecuted or that there is otherwise a substantial risk of such action" (A.222). Basically, District Court determined that appellants had failed to establish that the policy they sought to enjoin actually existed.

**C.    Appellants Have Failed to Show a Credible Threat of Enforcement**

While an actual arrest is not an absolute requirement for a plaintiff to demonstrate injury-in-fact, there must be a credible threat of government enforcement action. *Susan B. Anthony List*, 573 U.S. at 159. A credible threat of enforcement entails a fear of prosecution that is not imaginary or wholly speculative.

19

*Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016). A "credible threat sufficient to satisfy the imminence requirement of injury in fact…..will not be found where 'plaintiffs do not claim that they have been threatened with prosecution, that a prosecution is likely or even that a prosecution is remotely possible.'" *Id.* quoting *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 384 (2d Cir. 2015). Since no appellant claims to have been arrested or prosecuted, or personally threatened with arrest and prosecution, they have not shown a "credible threat" that constitutes injury in fact.

Appellants suggest that a credible threat of enforcement exists because the County has not disavowed the asserted policy. However, as made clear below and at this appellate level, there is no County policy of arresting live-fire trainees or instructors as demonstrated by the fact that no one claims to have been arrested or even personally threatened with arrest. There is no need to disavow a non-existent policy.

## POINT VI
## THE APPLICANTS ARE NOT AFFECTED
## BY THE ALLEGED PROCESSING DELAYS

By declining to comply with the CCIA's licensing requirements, the applicants have ensured that the County cannot issue them full carry pistol licenses without transgressing state law. Their decisions have rendered their complaints about the County's alleged processing delays entirely hypothetical. As District Court recognized, they have willingly left themselves without standing to contest the

20

licensing process. *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) (plaintiff who has not applied for a gun license in New York has no standing to challenge state's licensing laws).

In any event, while *Bruen* does not rule out "constitutional challenges to …. lengthy wait times in processing license applications" *Bruen* at 2138, n. 9, even the applicants identify no authority that supports the imposition of the stringent thirty-day time limit they move for.

## CONCLUSION

Plaintiffs-Appellants' appeal from the Memorandum of Decision and Order of the United States District Court of the Eastern District of New York, the Hon. Gary R. Brown, presiding, dated February 14, 2023 should be denied and said Memorandum of Decision and Order affirmed.

Dated:  Hauppauge, New York
          May 22, 2023

                              Respectfully submitted,
                              Dennis M. Brown
                              Acting Suffolk County Attorney
                              Attorney for Defendants-Appellees
                              100 Veterans Memorial Highway
                              Hauppauge, NY 11788

                    By:  */s/ Arlene S. Zwilling*
                              Arlene S. Zwilling
                              Assistant County Attorney