

January 9, 2024

**BY ECF**

Hon. Catherine O'Hagan Wolfe
Clerk of the Court
U.S. Court of Appeals for
the Second Circuit
40 Foley Square
New York, New York 10007

    Re:    *Giambalvo v. Suffolk County, New York*, No. 23-208

Dear Ms. Wolfe,

This firm represents Plaintiffs-Appellants ("Appellants") in the above-referenced appeal. Please accept the following in accordance with the panel's October 2, 2023 Order directing the parties to submit a letter brief, not to exceed fifteen pages double-spaced, addressing what effect *Antonyuk v. Chiumento*, _____ F.4th ____, 2023 WL 8518003 (2d Cir. December 8, 2023) has on this matter, if any.

***Antonyuk*'s Impact on Appellants' Article III Standing**

    A.  Licensee/Applicant Appellants

*Antonyuk* confirms that the district court erroneously held that Appellants lacked Article III standing to challenge the regulations for failure to first comply with the very regulations they were challenging as unconstitutional. [see, A218 ("In order to establish standing to challenge the State's licensing system, plaintiffs must demonstrate that they have complied with the requisites of that system."); Appellants' Br. at 18 ("The district court [wrongfully] held that because of Appellants' "unambiguous refusal to participate in mandated (1) firearms training, (2) disclosure of the identity of

2 Overhill Road, Suite 400
Scarsdale, New York 10583

info@bellantoni-law.com
www.bellantoni-law.com

(914) 367-0090 (t)
(888) 763-9761 (f)

cohabitants and family members and (3) disclosure of their social media accounts" "they cannot qualify for a permit and the State can, consistent with the mandates of *Bruen* and *Heller*, deny their applications"… "they cannot legally qualify for a carry permit…" [A219]"].

Appellants argued, both in their briefs and during oral argument, that they are not required to submit to the unconstitutional regulations they are challenging in order to establish Article III standing. "Imposing such a requirement would force an individual to engage in the very unconstitutional conduct they are seeking to enjoin. Illogical." [Appellants' Br. at 18].

The Second Circuit agreed. In *Antonyuk*, plaintiff Sloane challenged, *inter alia*, the social media disclosure requirement – without ever applying for a license. *Antonyuk*, at *19-21. The panel distinguished *United States v. Decastro,* 682 F.3d 160 (2d Cir. 2012) and *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), abrogated by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), which "govern[] challenges to a licensing rule regarding *eligibility*" rather than the application *process*. *Antonyuk*, at *20.

> "By eliding the distinction between challenges to eligibility rules and to the application process, the State in effect argues that the only way a plaintiff can challenge an application process is to do exactly what the plaintiff claims that he may not be required to do. Such a rule contravenes common sense. An applicant who challenges an application itself is not required to first comply with the objected-to component before bringing suit. Therefore, Sloane may challenge the disclosure requirements without first making the required disclosures."

*Antonyuk*, at *21.

*Antonyuk* requires reversal of the district court's finding that Appellants lacked Article III standing.

B. <u>Training and Organizational Appellants (Frank Melloni and RFI)</u>

*Antonyuk* did not address Article III standing related to firearms instructors, organizations, and/or derivative standing.

*Antonyuk's Impact on the Merits of Appellants' Regulatory Challenges*

    A.  Penal Law 400.00(1)(o)(iv) – Social Media Disclosure

Appellants' constitutional challenge to the disclosure requirements related to their social media account information is resolved by *Antonyuk* – in Appellants' favor. The Second Circuit found that the plaintiffs had a likelihood of success on the merits of their challenge because New York State failed to meet its burden under the *Bruen* test. "Conditioning a concealed carry license on such a disclosure imposes a burden on the right to bear arms that is without sufficient analogue in our nation's history or tradition of firearms regulation." *Antonyuk*, at *37 (affirming the district court's preliminary injunction of the social media requirement).

Because social media disclosures lack a "sufficient analogue in our nation's history or tradition of firearms regulation," a permanent injunction of 400.00(1)(o)(iv) should be issued by this Court.[1] As *Antonyuk*'s holding makes the outcome of this challenge "inevitable," this Court has the "power to dispose of it as may be just under the circumstances." *Wrenn v. D.C.*, 864 F.3d 650, 667 (D.C. Cir. 2017) (issuing permanent injunction on appeal of denial of preliminary injunction) (internal quotation marks omitted) quoting *Gross v. United States*, 390 U.S. 62, 71 (1968) (quoting 28 U.S.C. § 2106) and should do so "to obviate further and entirely unnecessary proceedings below." *Ibid*. (finding that remand for the district court to develop the records in this case would waste judicial resources); see also *Indep. Bankers Ass'n of Am. v. Heimann*, 613 F.2d 1164, 1167 (D.C. Cir. 1979) ("Although the case could now be remanded to the District Court for a decision on the merits, we have concluded that such a course is unnecessary and indeed would be unduly wasteful of judicial resources."); *Cf. Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (reversing denials of preliminary injunctions and remanding with instructions to enter declarations of unconstitutionality and permanent injunctions).

---

[1] Plaintiffs-Appellees' responsive brief did not seek the issuance of a permanent injunction. See, *Antonyuk v. Chiumento*, (2d Cir.) Case No. 22-2972 at Doc. 216.

B. Penal Law 400.00(1)(o)(ii) – Four Character References *and* Attestations

Appellants challenge Penal Law 400.00(1)(o)(ii), which requires applicants to provide "(ii) names and contact information of no less than four character references who can attest to the applicant's good moral character and that such applicant has not engaged in any acts, or made any statements that suggest they are likely to engage in conduct that would result in harm to themselves or others."

*Antonyuk* did not adjudicate the constitutionality of Penal Law 400.00(1)(o)(ii).[2]

C. Penal Law 400.00(1)(o)(iii), 400.00(19) -- 18-Hour Training Requirement

*Antonyuk* did not adjudicate the constitutionality of Penal Law 400.00(1)(o)(iii) and 400.00(19), the CCIA's training requirements.[3]

D. Lengthy Licensing Delays – Suffolk County Policy

*Antonyuk* did not adjudicate licensing delays.

In the context of upholding state laws requiring disclosure of one's cohabitants, however, the panel did confirm that "[b]ackground investigations should be quick and efficient." *Antonyuk*, at *36. While the panel's focus was on the "convenience of licensing officers" [*Id.*] it referenced *Bruen*'s invitation to challenge "lengthy wait times in processing license applications," which may "deny ordinary citizens their right to public carry." *Antonyuk*, at *36 citing *Bruen*, at 2138 n. 9.

The obvious unconstitutionality of such lengthy processing times requires the issuance of a permanent injunction by this Court against Suffolk County for licensing delays greater than 30 days.

---

[2] In upholding 400.00(1)(o)(i), which requires disclosure of cohabitant *identities*, the panel generally observed that the district court accepted the State's character reference analogue. *Antonyuk*, at *35 citing *Antonyuk*, 639 F. Supp. 3d at 306. However, the district court failed to consider the specific language of (1)(o)(ii), which requires those references to "attest" (swear) that the applicant has never "engaged in *any* acts or made *any statements* that *suggest* they are *likely* to engage in conduct that would result in harm to themselves or others." (emphasis added). Not only is there no historical tradition requiring third party evidence as a condition precedent to exercising the right to possess (or carry) firearms, the statute is overbroad, subjective, mandates speculation, and is otherwise repugnant to the plain text of the Second Amendment, historical tradition, and Supreme Court precedent.

[3] "The [district] court declined, however, to enjoin the requirements that an applicant attend an in-person meeting, provide four character references, and undergo firearms training." *Antonyuk*, at *5.

E. Suffolk County's "Arrest Policy"

Suffolk County was not a party in *Antonyuk*. As such, the Second Circuit has not adjudicated Suffolk County's policy of subjecting unlicensed individuals to arrest and incarceration for taking part in New York State's 18-hour training requirements, despite a specific exemption from criminal penalties under Penal Law 265.20(3-a).

The obvious unconstitutionality of threatening to impose and/or imposing criminal sanctions against unlicensed individuals who simply seek to comply with State law to apply for and obtain a concealed carry license requires the issuance of a permanent injunction by this Court against Suffolk County's Arrest Policy.

F. Penal Law 400.00(1)(b) -- Moral Character Assessment and Broad Discretion

*Antonyuk* upheld the constitutionality of Penal Law 400.00(1)(b) and the unbridled discretion imbued in licensing officers.

Appellants maintain their position that imbuing discretion in a government employee[4] to determine on a case-by-case basis who can and cannot exercise a preexisting and guaranteed in dividual right is repugnant to the plain text of the Second Amendment, this Nation's historical traditions, and Supreme Court precedent in Second Amendment (and other constitutional) challenges.

> "The very enumeration of the [Second Amendment] right takes out of the hands of government - even the Third Branch of Government - the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad."

---

[4] During oral argument before the Supreme Court in *U.S. v. Rahimi* (No. 22-915) the government conceded that 'dangerousness' determinations for purposes of terminating firearm rights **should not** be made at the administrative or executive level. https://www.supremecourt.gov/oral_arguments/argument_transcripts/2023/22-915_986b.pdf at p. 34 ("GENERAL PRELOGAR: I think it would be far more difficult to defend an executive branch or an administrative determination because of a separate Second Amendment principle that guards against granting executive officials too much discretion to decide who and who cannot have firearms. In the -- there was some history about that in -- in England, of course, but in the American legal tradition, these principles have been deployed through legislative judgments or through express judicial findings of dangerousness. So I don't think that we could point to the same history and tradition of giving executive branch officials that discretion.").

*D.C. v. Heller*, 554 U.S. 570, 634-35 (2008).

Bright line regulatory disqualifiers based on adjudicated "dangerousness" are created by Congress and state legislatures, not individualized subjective assessments. Even legislated objective factors are subject to constitutional challenge under the *Bruen* test.[5] *Bruen*, at 2138, n. 9 ("because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes").

***Suffolk County's January 4, 2024 Letter-Brief Regarding Article III Standing***

In its January 4, 2024 letter-brief filed in this Court, Suffolk County posits that Appellants have no standing to challenge the County's lengthy delays in processing license applications. The County's argument is based on *Antonyuk*'s conclusion that a failure to timely process a license application does not give rise to a futility argument for standing purposes. [Doc. 123 citing *Antonyuk*, at *20 ("[f]utility refers to the denial of an application; delays in receiving a decision do not render an application futile.")].

But *Antonyuk* is inapposite -- plaintiff Sloane *never applied* for a handgun license.[6] The district court in *Antonyuk* found that, because the defendants "would not even process an application" from Sloane due to a lack of available appointments, his application was "render[ed]…futile for the purpose of standing to sue, because such a delay would effectively deny him his Second Amendment right for more than a year." *Antonyuk*, at 260 citing *NYSRPA v. Bruen*, 142 S. Ct. 2111, 2138, n.9 ("That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license

---

[5] *Antonyuk* also skewed the definition of a "facial challenge" in its moral character discussion. *Antonyuk*, at *24-25. There is no set of circumstances under which a discretionary "moral character" assessment would be constitutional under the *Bruen* test – because there is no Founding Era tradition of requiring government permission or discretion to decide on a case-by-case basis who is entitled to Second Amendment protections. By finding otherwise, *Antonyuk* first allowed a discretionary analysis to occur in order to justify circumstances where objective statutory disqualifiers would apply.

[6] *Antonyuk v. Hochul*, 639 F. Supp. 3d 232, 258-59 (N.D.N.Y. 2022), reconsideration denied sub nom. *Antonyuk v. Nigrelli*, No. 122CV0986GTSCFH, 2022 WL 19001454 (N.D.N.Y. Dec. 13, 2022), and aff'd in part, vacated in part, remanded sub nom. *Antonyuk v. Chiumento*, No. 22-2908, 2023 WL 8518003 (2d Cir. Dec. 8, 2023).

applications ... deny ordinary citizens their right to public carry.").

The Second Circuit disagreed. *Antonyuk*, at *20 ("The district court therefore erred in concluding that Sloane's application was futile because it would not have been processed in a timely manner…Futility refers to the denial of an application; delays in receiving a decision do not render an application futile.").[7]

Unlike plaintiff Sloane in *Antonyuk*, each Appellant has submitted an application to the Suffolk County Licensing Bureau [A93 at ¶¶6-10; A105 at ¶¶9-11; A109 at ¶4; A101 at ¶8; A114] and are suffering irreparable harm from the County's lengthy processing delays.

While Appellants cited the district court opinion in *Antonyuk* to argue that the County's 2-3 year licensing delays establish futility [Appellants' Br. at 16] (thereafter rejected by the Second Circuit), Appellants' pending license applications establish Article III independent of a futility argument.

Thank you for the Court's consideration.

Very truly yours,

*Amy L. Bellantoni*
Amy L. Bellantoni

---

[7] The Second Circuit nevertheless found that Sloane had standing for other reasons. *Antonyuk*, at *20 (Sloane's "injury flows from the application itself, not from his asserted ineligibility for a license.").